## Commonwealth v. Graber

*Clifton A. Cloud,* for Commonwealth.

*F. J. Mervine,* for defendant.

SHULL, P. J., March 29, 1940.—Defendant was arrested for an alleged violation of The Game Law of June 3, 1937, P. L. 1225, art. IX, sec. 942. The specific subdivision of this section of the act which was alleged to have been violated reads as follows:

"It is unlawful for any person, without the consent of the commission or any of its authorized employes, to wilfully or maliciously cut bark from, or cut down, or remove, or otherwise injure, or destroy a tree or trees, or a shrub or shrubs, or parts thereof, growing upon lands acquired for use of the commission, or to wilfully, negligently, or maliciously do or cause to be done any other act to the detriment of such lands, or the trees or shrubs growing thereon."

By the justice of the peace, this defendant was found guilty and, under section 943 (c) of The Game Law, supra, was fined the sum of $600. Section 943 (c) provides as follows:

"Any person violating any of the provisions of this article shall, upon conviction, be sentenced to pay the following fines and costs of prosecution for each offense. . . .

"(c) For violating any of the provisions of paragraph (a) of section 942 of this article, twenty-five dollars ($25.00), for each tree or shrub or part thereof, or other damage committed; and shall pay double the value of each tree or shrub cut down or felled and treble the value in case such tree or shrub is removed from the land where grown as determined or estimated by the commission's employes . . .".

At the time this case was called for hearing on the appeal, defendant urged upon the court that the act, under which this defendant was prosecuted and convicted before the justice of the peace, is unconstitutional and void for the reason that it violates article I, sec. 2, of the Constitution of Pennsylvania, which provides as follows:

"All power is inherent in the people, and all free governments are founded on their authority and instituted for their peace, safety and happiness. For the advancement

of these ends they have at all times an inalienable and indefeasible right to alter, reform or abolish their government in such manner as they may think proper"; and it violates article V, sec. 1, of the Constitution of Pennsylvania, which provides as follows:

"The judicial power of this Commonwealth shall be vested in a Supreme Court, in courts of common pleas, courts of oyer and terminer and general jail delivery, courts of quarter sessions of the peace, orphans' courts, magistrates' courts, and in such other courts as the General Assembly may from time to time establish."

There is no question that this statute delegates, to the employes of the Game Commission, power of a type which under our Constitution the legislature has no power to delegate. This defendant urges that the power delegated is legislative power—and it smacks of that inasmuch as it is within the power of the legislature to fix the amount of penalties that may be imposed and, by this act, the ultimate fixing of the amount of penalty is delegated to the employes of the commission, thus clothing these employes with a function which, in the first instance, is purely legislative. It is true that it is within the power of the legislature to fix a maximum penalty, leaving to the discretion of the court the right and power to determine the amount of fine to be imposed in any case, but that fine may not be in excess of the maximum; and, it is also true that it is within legislative power to designate a maximum and a minimum penalty, thus limiting the court's discretion in imposing a fine, as a penalty, to a sum not more than the maximum and not less than the minimum as fixed by the legislature. A penalty or a part of a penalty may be based upon the value of property which may have been taken or destroyed, and such penalties may be provided by the legislature, but the function of determining the value is purely judicial and must be performed by the court and value determined through a verdict of a jury or the judiciary, major or minor; and, under our Constitution, where such penalties are provided, such values

must be the subject of judicial determination, the act designating such penalties to be within the Constitution. Were it to be held otherwise, it would be a beginning of the destruction of the right of trial by jury. As we have said, unquestionably, the legislature has a right to provide a penalty for the violation of a law prohibiting the cutting, injuring, or removing of property based upon the value of the property, whether it be its actual value or two or three or more times the value of the property taken or destroyed; but, when they undertake to prescribe a penalty based upon the value of property involved, it is not within the power of the legislature to set up an agency independent of the courts and to confer upon such agency the power of arbitrarily determining the value of that property—and, in this particular case, without giving to a defendant the right even to be heard. It gives to the employes of the Game Commission an arbitrary and uncontrolled power—one not guided by any definite rule or specified condition under which all similarly situated may expect uniform treatment under the law. Even though a law seem fair upon its face and impartial in its principles, yet if it be open to administration by an individual with an evil eye and an unequal hand so as to make a legal discrimination between persons in similar circumstances material to their rights, the denial of equal justice is still within constitutional prohibition. Yick Wo v. Hopkins, Sheriff, 118 U. S. 356. If such penalties are to be imposed, they may, under our Constitution, be imposed only after the value of the property has been determined by due process of law and, for such determination under our Constitution, that means by a judicial determination. The power that the legislature has here attempted to delegate to the employes of the Game Commission is a power that the legislature itself does not have under article V, sec. 1, of the Constitution of Pennsylvania, and such delegation of power is in contravention of the Fourteenth Amendment of the Constitution of the United States, sec. 1, which provides as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

In the case of Commonwealth ex rel. v. Halloway, 42 Pa. 446, 448, our Supreme Court said:

"The whole judicial power of the Commonwealth is vested in courts. Not a fragment of it belongs to the legislature. The trial, conviction, and sentencing of criminals are judicial duties, and the duration or period of the sentence is an essential part of a judicial judgment in a criminal record."

And, in the case of Commonwealth v. Gryctko, 22 D. & C. 462, 466, the court said:

"The legislature cannot vest any judicial power in an administrative officer. It cannot appropriate to itself judicial power or in any way trench upon the province of the judiciary: Greenough v. Greenough, 11 Pa. 489; Ervine's Appeal, 16 Pa. 256. It may, of course, from time to time, create new courts, but in the matter under consideration it did not do so. Legislation delegating the exercise of judicial functions to administrative tribunals is unwise and pernicious and may be unconstitutional if it grants to such tribunal the exercise of uncontrolled discretion: Commonwealth v. Bates, 17 D. & C. 626. '. . . ministerial officers are incompetent to receive grants of judicial power from the legislature, and their acts in attempting to exercise such powers are necessarily nullities': 6 R. C. L. 172."

Though the question is not raised by counsel for defendant, in considering the constitutionality of sections 942 and 943 of The Game Law, we are confronted with the question of whether or not article III, sec. 3, of the

Constitution of Pennsylvania is violated by this act. Article III, sec. 3, of the Constitution of Pennsylvania provides:

"No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

Even though upon inquiry, there is nothing in the title of this act which would intimate to a well-informed lawyer, to say nothing of the average member of the legislature or the average citizen, or which could lead him even to suspect, that it contains a provision relative to the cutting of bark, trees, or shrubs of the following nature, to wit:

"Section 942. . . . It is unlawful for any person, without the consent of the commission or any of its authorized employes, to wilfully or maliciously cut bark from, or cut down, or remove, or otherwise injure, or destroy a tree or trees, or a shrub or shrubs, or parts thereof, growing upon lands acquired for use of the commission, or to wilfully, negligently, or maliciously do or cause to be done any other act to the detriment of such lands, or the trees or shrubs growing thereon"; and providing a penalty for so doing in section 943 (c).

We are mindful of the fact that the act in question is an act which, inter alia, consolidates statutes, and mindful of the fact that the section of the Constitution in discussion does not require that a general act consolidating statutes enacted over a course of years with reference to some broad subject of legislation shall, in its title, refer to all the other subjects collaterally affected by the passage of the various statutes to be consolidated and that, in such cases, notice of the contents of the legislation is sufficient if the statutes were originally enacted in compliance with this section. The title to this act is:

"Concerning game and other wild birds and wild animals; and amending, revising, consolidating, and changing the law relating thereto."

While this title would not in any way suggest to us that the act provided a penalty for the cutting of bark, shrubbery, or timber on lands controlled by the Game Commission or that it in any way dealt with that subject, still, we made a search of the titles of acts relative to game and other wild birds and wild animals and legislation relative to game refuges, which are in no wise referred to in this title, and we find none with a title indicating legislation on the subject covered by section 942 of the Act of 1937 from which it might be presumed that a person, on inquiry, could ascertain that such subject was covered by legislation consolidated by this bill. By what stretch of the imagination this title could be held to be notice to anyone that the act related to the cutting of bark, shrubbery, or trees upon land under the control of the Game Commission is beyond our ken and beyond the ken of anyone else, even if on inquiry.

"In Strain v. Kern, 277 Pa. 209; Spangler's Est., 281 Pa. 118, and Spector v. Northwestern Fire & Marine Ins. Co., 285 Pa. 464, 470, we said that a statute is constitutional only to the extent that its purpose is *clearly* expressed in the title, everything beyond this being violative of article III, section 3, of the state Constitution. We have also steadily held to the requirement of a *clear* expression, in contradistinction to one which can only be reached by a process of reasoning: Provident Life & Trust Co. v. Hammond, 230 Pa. 407; Investor's Realty Co. v. Harrisburg, 281 Pa. 200; Guppy v. Moltrup, 281 Pa. 343": Phillips' Estate, 295 Pa. 349, 353.

For that reason both sections in question, to wit, 942 and 943, subparagraph (*c*), violate article III, sec. 3, of the Constitution of Pennsylvania and are unconstitutional and void.

And now, March 29, 1940, for the reason above set forth, the judgment of the justice of the peace is reversed and set aside and defendant, Eugene Graber, is released from his recognizance and discharged sine die.