# Appeal of Edwards et al.

While it is within the power of the legislature, by an Act of Assembly, to confer legitimacy upon an illegitimate child, so as to render him capable of inheriting from an ancestor, to the same extent as if he had been born in lawful wedlock, yet it is not possible, by legislation, to alter the fact of illegitimate birth so as to entitle such child to take, by purchase under a limitation in a prior deed of trust to "lawfully begotten children."

January 9th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ. CLARK J., absent.

Appeal from the Court of Common Pleas, No. 1, of *Philadelphia County*: Of January Term, 1884, No. 249.

This was an appeal by Emma H. Edwards, surviving executrix of Sarah P. Howard, deceased, and Charles M. Cooper and Joseph B. Cooper, from the decree of said court dismissing their exceptions to the report of an Auditor, in the matter of the distribution of a fund arising under a certain deed of trust, and confirming the Auditor's report.

The facts of the case, as found by the Auditor, Samuel Hinds Thomas, Esq., were as follows:—

Elizabeth Wistar by Indenture dated November 25th, 1826, duly recorded, granted and conveyed unto Israel W. Morris, his heirs and assigns, a certain lot of ground and messuage

thereon erected situate in the City of Philadelphia, In trust, "as to one equal third part thereof to receive the rents, issues and profits thereof, and after all just and reasonable deduction for taxes, charges, repairs and other expenses, to pay the residue of such third part to Richard M. Wistar (son of the said Elizabeth Wistar) during his natural life, and in case he should die leaving. *lawfully begotten children* or grandchildren to survive him, then the said Israel W. Morris, his heirs or assigns, shall be and stand seised of the said one third to the use of all such children or grandchildren, their heirs and assigns, equally to be divided among them, the grandchildren taking the shares which their parents would have taken."

Subsequently Joseph B. Townsend, Esq., was substituted trustee under the said deed of trust, by decree of the Court of Common Pleas of Philadelphia County, in place of said Israel W. Morris, discharged.

The said property granted by said deed was afterwards sold, under the provisions of the Act of April 18th, 1853, (the Price Act) and one third of the proceeds was paid to said substituted trustee, who filed his account thereof, and the same constitues the fund for distribution.

Richard M. Wistar, the cestui que trust for life under the above deed, had no child born in lawful wedlock, and died March 27th, 1883. He left to survive him one son, Thomas Mifflin Wistar, who was born out of lawful wedlock. (The date of his birth does not appear in the record). An Act of Assembly, approved April 13th, 1853, (P. L. 394) enacted as follows :—

"That Thomas Mifflin Wistar, son of Richard M. Wistar, shall have and enjoy all the rights and benefits of a child born in lawful wedlock and shall be able and capable in law to inherit and transmit any estate whatsoever as fully and effectually as if he had been born in lawful wedlock."

Said Thomas Mifflin Wistar had one son George M. Wistar, born in 1857.

Elizabeth Wistar, the settlor, by her last will, dated in 1834, proven September 12th, 1844, devised as follows: "I give and bequeath unto my son Mifflin Wistar, M. D., of the city of Philadelphia, all my estate of whatever kind and description and wherever situate, to be held and enjoyed by him as fully and absolutely as I myself am entitled to the same."

Said Mifflin Wistar and wife, by deed dated May 5th, 1846 (after the decease of Elizabeth Wistar) granted and conveyed unto Sarah P. Howard and her heirs "all his right, title and interest in law, equity or otherwise, as well contingent as vested of in and to" the said premises conveyed by the original deed of trust aforesaid.

The title thus acquired by Sarah P. Howard passed under her will as to one fourth part to Joseph B. Cooper (the father of the appellants, Joseph B. and Charles M. Cooper) who died prior to January 18th, 1862, leaving a widow, who survived him about three years, and the above mentioned sons, Joseph B. and Charles M. Cooper, who were his only children; and as to the remaining three fourths to Emma Edwards, the executrix under the will of Sarah P. Howard, in accordance with the provisions thereof.

The fund was claimed, on the one hand, by the said Thomas Mifflin Wistar and George M. Wistar, under the limitations of the original deed of trust, and, on the other hand, by the said Emma Edwards, executrix of Sarah P. Howard and the two sons of Joseph B. Cooper, deceased.

The Auditor's opinion on the law was as follows:—

The law is so well settled in Pennsylvania that it is within the power of the legislature to remove the taint of illegitimacy and to enable a bastard to take, transmit and inherit property, as if he had been born in lawful wedlock, that it is not necessary to discuss the question. It will be sufficient to refer to the cases of Killam *v.* Killam, 3 Wr., 120; Miller's Appeal, 2 P. F. S., 113; McGunnigle *v.* McKee, 27 Id., 81. Nor does this power seem unjust or unreasonable when it is considered that by the Act of legitimation, the legislature is not conferring upon the bastard a right which by nature he did not have, but it is only singling out an individual and bestowing upon him that of which for the public good of the state, it has seen fit to deprive generally the class to which he belongs. The transmission of property by will or otherwise, and the taking by inheritance not being of natural right, but existing only under the law, and this privilege having been restricted in the case of those born outside of what the law holds as lawful wedlock, it is of course within the power of the legislative body to remove the restriction which the law imposes, and confer upon any one all the privileges which but for that restriction he would have had. To this power of the legislative body to remove the legal taint of blood there is in Pennsylvania but one exception, namely, that in so doing they shall not divest any rights which have once vested.

The case therefore before the Auditor involves two questions, first, whether the act of legitimation brings the claimant, Thomas M. Wistar, within the terms of the original deed of trust, and, second, whether the property conveyed and granted by Elizabeth Wistar, the original settlor, had so vested in any one prior to the date of the act of legitimation, that to award it to Thomas M. Wistar would be a violation of the constitutional provision.

It will be proper to consider the second of these first, as being the more readily answered. Elizabeth Wistar by the deed of trust, upon the termination of the life estate given her son R. M. Wistar, granted the property in question to his lawfully begotten children or grandchildren. Until the death therefore of the said R. M. Wistar, the person or persons who were to take upon the termination of the life estate remained indeterminate. Up to that period it was always possible by the marriage of the life tenant and his death, leaving issue, that the remainder should vest in some one or more of that class provided for by the deed of trust, and until that event no resulting trust could arise from failure of a proper person to take the remainder; nor as a matter of fact was there any one at the time the Act of legitimation was passed in existence, whose rights would be invaded by placing Thomas M. Wistar in the position of a full legitimate son of Richard M. Wistar. If then the claimant is not excluded by the terms of the deed of trust, his claim to the property in question is made out.

But it was urged in the argument that whatever other rights the Act of legitimation might give to Thomas M. Wistar, he was excluded by the very words of the original deed of trust from making any claim upon the funds therein granted. The words used and upon which counsel mainly rested his case, are " and in case he shall die leaving lawfully begotten children or grandchildren," and it was said that by the use of these words the settlor clearly intended to exclude those who were not actually born in wedlock. But it seems to the Auditor these words "lawfully begotten" cannot be distinguished from those other expressions such as "heir" or "lawful issue," which have been held to include those who have been legitimated; for as the disqualifications of bastardy are of civil institution only and do not intrinsically weaken the natural ties of kindred, by the words "lawfully begotten," can only be meant begotten in accordance with the law, that is to say in the manner that the law prescribes, and although it may be true that at the actual time of begetting or of the birth the forms prescribed by law had not been complied with yet, since these forms are but the creatures of the law, it is in the power of the legislative body to declare them unnecessary and to validate that which but for the law would have been good and valid without these forms.

Had it been the intention of the settlor to exclude her son's bastard children or grandchildren who should be legitimated, there are many words by which she might have effected her purpose other than those which she did use, words which have been so often used in deeds of this kind as to have become almost a set phrase.

The words of MERCUR, J., in McGunnigle *v.* McKee, seem fully applicable here.  "He made his will under the law and left it for the law to determine whether Thomas died without an heir.  He must be presumed to have known the legislative power to declare who should be an heir.  He therefore intended to subject the property devised to legislative discretion, to enact within constitutional limits whether Thomas had issue capable of inheriting."  Equally must Elizabeth Wistar, the original settlor, be presumed to have known the legislative power to remove the legal taint of blood and to declare the legitimacy as if it never had been, just as in the case of a reversal of an attainder for treason.

In support of this view that legitimated children cannot be excluded from equal rights with those born in lawful wedlock, except by express terms, may be quoted the very strong language of WOODWARD, J., in Killam *v.* Killam, 3 Wr., 125.  "How do we know that the children were not born in wedlock, the legislature having said they were?  How can we impeach the union between the parents whatever it was since the legislature has made it lawful?"  What difference is there between this and the case in hand?  How do we know that Thomas M. Wistar was not born in lawful wedlock, and therefore is a lawfully begotten child of R. M. Wistar?  How can we impeach the union between his parents whatever it was since the legislature has made it lawful?

For these reasons it is the opinion of the Auditor that the fund in the hands of the accountant should be awarded to Thomas M. Wistar as the lawfully begotten son of R. M. Wistar within the terms of the original deed of trust.  Under this view it is not necessary at present to consider the claim of George M. Wistar, the son of Thomas M. Wistar.  The claims represented by S. W. Pennypacker, Esq., do not seem to the Auditor to be good, since they depend upon the assumption that there was a resulting trust in favor of Elizabeth Wistar and her representatives arising out of the failure of the original settlement by lapse, a conclusion which the Auditor has endeavored to show to be unsound both in law and fact.

The Auditor accordingly awarded the fund to Thomas Mifflin Wistar.

Exceptions filed to the Auditor's report by Emma H. Edwards, executrix of Sarah P. Howard, deceased, and by Joseph B. Cooper and Charles M. Cooper, were dismissed by the court, and the Auditor's report was confirmed (no opinion filed).  The said exceptants took this appeal, assigning for error the said decree.

*Samuel W. Pennypacker,* for the appellants.—The fallacy in

the Auditor's reasoning was that he assumed the question to be the construction of an Act of Assembly, whereas the real question was the construction of a deed of trust. If the intention of the settlor is clearly expressed in the deed, and if that intention was a lawful one at the date of the deed, it must be followed. If she has given property to A. and A. is competent to take it, no Act of the legislature can give it to B. The settlor in her deed defined the capacity to take, among the possible children of her son Richard, and said that those of his children who should take her estate must be "lawfully begotten." There can not be any doubt as to the meaning of these words. They have been used in wills, deeds and other legal instruments from time immemorial, and never with any but the one signification. They mean that the person or persons whom they describe must be conceived in lawful wedlock. The Auditor has found as a fact that the appellee was not so born, and, therefore was outside of the limitations of the deed, but by a process of reasoning, which is very much like a trick of legerdemain, he has succeeded in reaching the conclusion that the appellee ought to have the estate. We concede the power of an Act of Assembly to legitimate, but we deny its power to change the settlements made in a preceding deed, and to give an estate to those whom the grantor has seen fit to exclude. Our position is supported, in principle, by McGunnigle v. McKee, 27 P. F. S., 81; Miller's Appeal, 2 Id., 113; Curtis v. Hewins, 11 Met., 294; Edmondson v. Dyson, 7 Ga., 512; Lee v. Shenkle, 6 Jones (N. C.) Law, 313; Kent v. Barker, 2 Gray, 535; Stevenson v. Sullivant, 5 Wheaton, 207; Bent v. St. Vrain, 30 Mo., 268; Remmington v. Lewis, 8 B. Monroe, 606.

A limitation in a deed or will to a "child" is confined to legitimate children: Cartwright v. Vawdry, 5 Ves. Jr., 534; Bagley v. Mollard, 1 Russ & My., 586. Any form of words that could be used would be rendered illusory, by the same fallacious reasoning as that by which the Auditor evaded the effect of the limitation to "lawfully begotten children." A provision for future illegitimate children is against the policy of the law, and void: Holt v. Sindrey, 7 L. R. Eq. 176; 2 Jarman on Wills, 250.

Moreover the Act of Assembly could not divest rights which had vested, by virtue of a resulting trust, immediately upon the execution of the deed of trust: Schafer v. Eneu, 4 P. F. S., 304; Bispham's Eq., § 87; Huston v. Hamilton, 2 Binn., 387; Sheaffer's Appeal, 8 Barr, 38; Norman v. Heist, 5 W. & S., 171; Killam v. Killam, 3 Wr., 121; Hinnershitz v. Bernard, 1 Har., 521.

*James P. Townsend,* for the appellee.—We contend that by virtue of the Act legitimating Thomas M. Wistar he became, in the eye of the law, a lawful child, vested with the same rights, as if, lawfully begotten he had been born in lawful wedlock. The efficiency of the Act to accomplish its purpose, he being the veritable son of Richard, makes his conception as lawful as his birth; to both were then imparted a quality of lawfulness in relation to the rest of society which had been withheld by restrictive legislation at the time of their actual occurrence, and in the legal exercise of its discretion the supreme power removed its own restriction. This does not change the settlements in the deed, and does no violence to the settlor's purpose: Killam *v.* Killam, 3 Wr., 120; Miller's Appeal, 2 P. F. S., 115; McGunnigle *v.* McKee, 27 Id., 81. The argument that the Act, if given the effect we claim for it, would divest vested rights, is unsound, because no resulting trust could arise at the date of the trust deed, nor until there is default of persons to take under its limitations. If Thomas M. Wistar had been born in lawful wedlock on the date of the Act, his title to take would not be disputed, yet the same argument would apply. Shaffer *v.* Eneu, cited by plaintiff in error, does not apply, as adopted children have not identity of blood with the adopting parent, nor does the Act relating to adoptions attempt the impossibility of making them children by blood. Here there is identity of blood; the law which places a disability upon a bastard, may remove the disability with the same effect as if it never existed: Johnson's Appeal, 7 Norris, 346.

Mr. Justice GREEN delivered the opinion of the court, February 2d, 1885.

The persons who take the fund in court for distribution, must do so as designated grantees under the deed from Elizabeth Wistar to Israel W. Morris in trust. The ultimate beneficiaries of the fee are there described as "lawfully begotten children or grandchildren" of Richard M. Wistar, who was the son of Elizabeth Wistar and the *cestui que trust* for life of the property which produced the fund in court. The question is whether the appellee Thomas M. Wistar is a "lawfully begotten" child of Richard M. Wistar. He is the illegitimate son of Richard M. Wistar and was legitimated by an Act of Assembly passed in April 1853. There is no doubt that by force of this Act he became the heir of Richard M. Wistar and would be capable of inheriting from him to the same extent as if he had been born in lawful wedlock. Under several of our decisions he could take under the description of "issue," "lawful issue," "heir," or "person entitled under the intes-

tate laws ": Killam *v.* Killam, 3 Wr. 120 ; Miller's Appeal, 2 P.
F. S. 113 ; McGunnigle *v.* McKee, 27 Id., 81 ; Johnson's Appeal,
7 Norr. 346.   But the persons who take this fund do not take
title from Richard M. Wistar.   They must found their title
upon the deed from Elizabeth Wistar to Israel W. Morris.
It was she who created the estate and by the deed in question.
She gave the property to Morris in trust for her son Richard
M. Wistar during his life, and after his death to his "lawfully
begotten" children or grandchildren.   We must regard this
language as *descriptio personarum*.   It describes the fact which
shall characterize the ultimate beneficiaries.   They must be
"lawfully begotten."   It is not enough that they have a legal
status, that they may have inheritable blood from their father,
that they may be his "heirs," or his "lawful issue."   Unless
they are lawfully begotten children they do not fill the
essential requirement of the deed of trust.   It is undoubtedly
true that Thomas M. Wister was not "lawfully begotten" by
his father.   It is equally true that it is not possible for any
legislature to make that a fact which is not a fact.   Legisla-
tion can confer legitimacy upon illegitimates, but it can not
alter the facts of nature.   In Schafer *v.* Eneu, 4 P. F. S. 304,
we applied this doctrine strictly, holding that a devise over to
" children," after a life estate to their mother, would not em-
brace children who were adopted by the life tenant.   We see
no difference in principle between that case and this.   Both
are governed by the same idea.   The ultimate takers of the
estate do not derive their title by descent from their parent,
but by purchase from the original grantor.   In view of that
consideration they must correspond to the description con-
tained in the deed.   Where that description defines merely a
legal status it includes all who hold the status, but where it
defines a fact, those only can claim its inclusion who con-
form to the fact.   Thomas M. Wistar is not within that
category in this case, and therefore is not entitled to the fund.

The decree of the court below is reversed and
the fund in the hands of the accountant is
ordered to be paid to the appellants in the
proportions in which they are respectively
entitled to the same.   The costs of this appeal
to be paid by the appellee.