## Freeman's Estate (No. 1).

*Will—Power of appointment—Appointment to children—Adoption of child—Invalid appointment.*

1. Where a testator gives his estate to a trustee to pay the income therefrom to his sons and daughter and "from and after the death of either of my sons or daughter and until the death of all of them to pay the income which he or she would, if living, have received to such person or persons of kin, to such son or daughter as he or she may by will have

appointed, and in default of such appointment to the child or children of such son or daughter," and one of the sons on dying appoints the income among his children, including among them an adopted child not of the kin nor blood of the donor, such appointment to the adopted child is invalid, and the adopted child will take nothing thereby; but the invalid appointment will not invalidate the other appointments to the children so as to make a complete default of appointment of all of the income. Even if there should be a total default the adopted child would not be entitled to assert any rights to a portion of the income under the alternative provision in the will of the donor, inasmuch as she is not a child of her adopted father within the meaning of the will of the latter's father.

2. In such a case the amount of the income invalidly appointed will be equally divided among the son's own children.

3. The words "kin" and "kindred" when used in a will, are limited in legal meaning, as in common use, to those related by blood.

Argued Dec. 14, 1908. Appeal, No. 104, Oct. T., 1903, by Mary Anne Williamson, from decree of O. C. Phila. Co., Jan. T., 1881, No. 228, dismissing exceptions to adjudication in Estate of Henry G. Freeman, deceased. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Exceptions to adjudication by PENROSE, J.

The auditing judge found, inter alia, the following facts:

The account is of the portion of the estate of the testator, who died February 15, 1875, held under the provisions of his will, as set forth in adjudications of accounts heretofore filed, in trust for his widow, Eliza Freeman, for life, and after her death for his children, William H. Freeman, James B. Freeman, Charles D. Freeman, Chapman Freeman, Elizabeth H. Ashburner and Caroline S. Schultz, until the death of the last survivor, the provision for the children being that the income shall be paid to them "during their several and respective natural lives, into their own hands and for their own use, without any power on the part of either of them by order or otherwise to change, transfer, assign or in any manner anticipate the same so that the same shall not be liable for the debts of them, or any of them, or to levy an attachment under or upon any writ or process whatever against them, or any of them,

and as to my said daughters for their several and respective use, and subject as aforesaid free from the control, debts or contracts of any husband they or either of them now have or may hereafter take. In trust from and after the death of either of my sons or daughters and until the death of all of them to pay the income which he or she would, if living, have received to such person or persons of kin to such son or daughter as he or she may by will have appointed and in default of such appointment to the child or children of such son or daughter that may then be living or the issue of any child or children of such son or daughter that may then be dead, leaving issue, in equal shares, as however that such issue shall take per stirpes only a parent's share and if there be no children or issue of such son or daughter then such person or persons as would take from, through or under me had I lived until then and died intestate."

\* \* \* \* \* \* \* \*

James B. Freeman, another of the sons, died, as further represented, April 5, 1907. By his will, which was admitted to probate, letters testamentary being granted to Mary Anne Williamson, E. G. Hammersly and the Real Estate Title Insurance & Trust Company, he provided, in the exercise of the power of appointment, as to his share of income given by the will of his father, the testator, that it should be paid by the Girard Trust Company, trustee, "to and among my children, including under that denomination my said adopted daughter Mary Anne Williamson, whom I have declared and hereby declare to be kin to me in the sense in which that expression is used in the will of my late father in manner following videlicet . . . . three-thirtieths to his daughter, Helen Brewster; three-thirtieths to his daughter, Matilda Dusezeau and three-thirtieths to his daughter, Minnie Thompson Lee, three-thirtieths to his daughter, Lena Vessillier; eight-thirtieths to 'my said adopted daughter, Mary Anne Williamson;' and eight-thirtieths to his son, Robert C. Freeman."

The will further provided as follows:

"I declare that the provisions and appointments in favor of my children and their issue and representatives are hereby

declared to be in full satisfaction of the whole claims competent
to them and all rights according to law competent to them by
through and in consequence of my death and are granted con-
ditionally on their concurring in this my will and assisting in
every way in their power to have all its provisions given full
effect to and in the event of any of them being dissatisfied
with the apportionment in his or her favor or in favor of any
other children (including the said Mary Anne Williamson) and
challenging the same or otherwise challenging the provisions
of this my will in whosoever's favor the same may be they
shall be held to forfeit and renounce and discharge for them-
selves and their issue or representatives the provisions herein
conceived in their favor and the appointments hereinbefore
made in his, her or their favor are hereby in that event recalled
and the shares which would have gone to such parties but for
their so challenging the provisions hereof shall be divided
among those appointees who support this my will in the same
proportions as the respective shares of such supporting ap-
pointees bear toward one another in the original appointments
under this my will."

\*     \*     \*     \*     \*     \*     \*     \*

The account shows a balance of income of $563,512.21, of
which distribution has been made, as shown by the distribu-
tion account, of $560,211.84, leaving for present distribution
$3,300.37, of which, as shown by the general summary for the
distribution account, there is for general distribution $581.46,
and for distribution among particular interests $2,718.91.

Of the sum last mentioned ($2,718.91) the petition for dis-
tribution states as follows: "Robert C. Freeman takes as pass-
ing to him on account of his share of income under James D.
Freeman's will should the will not be disturbed as to this in-
terest, $184.89. There has been withheld the eight-thirtieths
of income bequeathed by James B. Freeman's will to Mary
Anne Williamson, pending decision of the court as to the effect
of appointment to her by James B. Freeman, $739.56. There
was withheld from distribution income belonging to the share
of James B. Freeman, accrued to his death, pending the claim
thereto of his widow, Helen C. Freeman, the sum of $196.67.

Since the account was filed the widow has withdrawn her claim, and the supplemental account shows the payment of this sum to the executors of James B. Freeman ($196.67)."

The petition further states that "there has been withheld from distribution one-fourth of the Charles D. Freeman share of income, which accrued since June, 1906. This is claimed on the one hand, by Anna Diamond Freeman, widow and sole legatee of Henry B. Freeman, deceased, and, on the other, by the sisters of Henry B. Freeman. A decree of this court, entered December 3, 1906, in favor of the said widow, is now sub judice in the Superior Court. See Freeman's Estate, 15 Pa. Dist. Rep. 928. The amount of income so withheld is $1,597.79."

The petition submits as "the only matter in doubt requiring the consideration and decision of the court at the audit of which the trustee has been advised (other than the matters in controversy as to a fraction of the Charles D. Freeman share of income . . . . ) is that relating to the claim of Mary Anne Williamson to take eight-thirtieths of the James B. Freeman share of income, she claiming to 'be of kin' to him. No agreement of the children of James B. Freeman has been filed with the trustee which would make it safe for the trustee by payment to her to recognize the claim of Mary Anne Williamson, without the adjudication of the court upon the question."

The petition adds as follows: "the interest affected is the above eight-thirtieths of income specifically withheld, and also five-thirtieths of one-sixth or four-ninetieths of the general undistributed income shown in the account, and amounting to $581.46. The determination of the court at this audit as to the said Mary Anne Williamson claim will be controlling as to future income, and is therefore necessary for the trustee's guidance in making future distribution."

Under proceedings regularly instituted in the court of common pleas No. 4, of September Term, 1892, No. 91, Mary Anne Williamson, who was then of age, was adopted by James B. Freeman, September 29, 1892.

The auditing judge held that the appointment to the adopted daughter was invalid, but that its invalidity did not render

invalid the appointment to James B. Freeman's own children. He also held that the amount of income represented by the invalid appointment should be divided equally among the actual children of James B. Freeman.

The exceptions to the adjudication were dismissed.

*Errors assigned* were in dismissing exceptions to adjudication.

*George S. Russell*, with him *George deB. Myers*, for appellants.—The word "kin" may include an adopted child: Bower v. Hafley, 85 Ky. 673; Hibbard v. Odell, 16 Wis. 663; Delano v. Bruerton, 148 Mass. 619; Lusby v. Cobb, 80 Miss. 715.

Should the court determine that Mary Anne Williamson is not "kin" within the meaning of the will of Henry G. Freeman and the power of appointment was therefore imperfectly or defectively executed by him, the entire appointment is utterly void and distribution should be directed under the alternative provision of the donor's will, as if the donee had not attempted to execute the power: Rogers's Estate, 31 Pa. Superior Ct. 620.

, It might be urged that by adopting a child, the donee of the power increases the class ·and that the adoption was not reasonably within the contemplation of the testator. It has been held, however, that a testator who commits the distribution of his estate to the law upon the happening of an event necessarily future, must reasonably be presumed to have contemplated the possibility of a change in the law in the meantime: Kohler's Est., 199 Pa. 455; McGunnigle v. McKee, 77 Pa. 81; Opdyke's App., 49 Pa. 373; Miller's App., 52 Pa. 113; Seitzinger's Est., 170 Pa. 538; Kohler's Est., 199 Pa. 455.

At the time of the vesting of the estate, to wit: at the death of James B. Freeman, Mary Anne Williamson was his child by legal adoption; she was a child "then living" and would be equally entitled to participate under the devise on failure of appointment: Johnson's App., 88 Pa. 346; Rowan's Est., 132 Pa. 299; Kohler's Est., 199 Pa. 455.

*Frank P. Prichard*, with him *John Marshall Gest* and *Joseph deF. Junkin*, for appellees.—Mary Anne Williamson though

adopted by James B. Freeman as his child was not of "kin" to him and therefore he had no right to appoint to her: Com. v. Nancrede, 32 Pa.. 389; Com. v. Ferguson, 137 Pa. 595; Grubb's App., 58 Pa. 55; Phillips's Est., 17 Pa. Superior Ct. 103; Wayne's Est., 18 Phila. 33; Withy v. Mangles, 10 Cl. & Fin. 215; Swasey v. Jacques, 144 Mass. 135.

Nor if the appointment to her be void, can Mary Anne Williamson take under the alternative distribution directed by the will of the donor, as a "child" of James B. Freeman: Schafer v. Eneu, 54 Pa. 304.

OPINION BY PORTER, J., July 14, 1909:

Henry G. Freeman died February 15, 1875, leaving a will by which the Girard Trust Company was appointed trustee of his residuary estate, the income of which was to be paid to his widow, during her life, and after her death was to be equally divided between his six children, one of whom was James B. Freeman, during their respective lives. The will contained the following clause which is material to the disposition of this case: "In trust from and after the death of either of my sons or daughters and until the death of all of them, to pay the income which he or she would, if living, have received to such person or persons of kin to such son or daughter as he or she may by will have appointed and in default of such appointment to the child or children of such son or daughter that may then be living or the issue of any child or children of such son or daughter that may then be dead, in equal shares, as however that such issue shall take per stirpes only a parent's share and if there be no children or issue of such son or daughter then such person or persons as would take from, through or under me had I lived until then and died intestate." We have in this case to deal with the income of the share which James B. Freeman received during his life and concerning which he was by the will of his father vested with a power to appoint such of his own kin as he might by will designate, to receive the income of that portion until the death of the last of his brothers or sisters.

James B. Freeman died on April 5, 1907, having first made

a last will and testament which was duly admitted to probate. He attempted in this will to exercise the power of appointment, conferred by the will of Henry G. Freeman, as to his share of the income, by directing that it should be paid by the trustee, "to and among my children, including under this denomination my said adopted daughter Mary Anne Williamson, whom I have declared and hereby declare to be kin to me in the sense in which that expression is used in the will of my late father in manner following, videlicet: I direct and appoint the said income to be apportioned among and paid over to my said children in the following shares and proportions, namely: three-thirtieth parts or shares to my daughter Helen, . . . . three-thirtieth parts or shares to my daughter Matilda, . . . . five-thirtieth parts or shares to my daughter Minnie Thompson Lee, . . . . three-thirtieth parts or shares to my daughter Lena, . . . . eight-thirtieth parts or shares to my adopted daughter Mary Anne Williamson; and eight-thirtieth parts or shares to my son Robert C. Freeman." The court below held that the appointments by James B. Freeman, to his children, his actual children, were good and constituted a valid partial exercise of the appointment, but that the appointment of eight-thirtieths of the income to the adopted daughter Mary Anne Williamson, the appellant, was not authorized by the will of Henry G. Freeman and was invalid. The court entered a decree that the income be paid upon the twenty-two-thirtieths as appointed to the actual children in the will of James B. Freeman, and that the eight-thirtieths of the income invalidly appointed to the appellant be paid, under the will of Henry G. Freeman, in equal shares to the children of James B. Freeman. Mary Anne Williamson appeals from this decree.

Mary Anne Williamson, who was then over the age of twenty-one years, was adopted by James B. Freeman, on September 29, 1892, under proceedings regularly instituted in the court of common pleas No. 4 of Philadelphia county. This proceeding was in accordance with and under the authority conferred by the Act of May 9, 1889, P. L. 168. Over seventeen years after the death of Henry G. Freeman his son adopted an adult woman as a daughter, under the authority of an act

of assembly which was not passed until fourteen years after the will of Henry G. Freeman had taken effect. That will delegated to James B. Freeman the power to appoint the income of the estate "to such person or persons of kin," to said James B. Freeman as he might by will appoint. Was Mary Anne Williamson of kin to James B. Freeman within the meaning of the will of Henry G. Freeman? The property is the estate of Henry G. Freeman, the only power which James B. Freeman had over it was that conferred by the will of his father, and that will expressly restricted the power to appoint to the "kin" of the donee. The description did not merely define a legal status, which would include all who held the status, but it defined a fact, and only those who can claim to be included within this definition can claim. The words "kin" and "kindred," when used in a will, are limited in legal meaning, as in common use, to those related by blood, and do not include a husband or wife, unless accompanied by other words clearly manifesting a purpose to extend their signification: Haraden v. Larrabee, 113 Mass. 430; Swasey v. Jaques, 144 Mass. 135; Keteltas v. Keteltas, 72 N. Y. 312; Wetter v. Walker, 62 Georgia, 142. The adoption of the appellant, under the provisions of the act of 1889, invested her with all the rights of a child and heir of James B. Freeman, but it did not change the facts. She was not the actual child of James B. Freeman and was not of his blood: Edwards's Appeal, 108 Pa. 283. The intention of Henry G. Freeman must remain the controlling factor in the disposition of the income of this property, so long as the trust continues. He authorized James B. Freeman to appoint to persons within a designated class, those of his own blood, and any appointment outside that class was necessarily invalid.

The appellant contends that even if the appointment of a part of the income to her was in excess of the power of the appointer, that as this was a defective execution of the power the entire attempt of James B. Freeman to appoint was invalid, as a whole. She asserts, therefore, that the entire income of the share of the estate which had been enjoyed by James B. Freeman during his lifetime must be distributed as directed by

the will of Henry G. Freeman, upon the failure of his son to make a valid appointment, and that as she is an adopted daughter of James B. Freeman she is entitled, under the will of Henry G. Freeman, to one-sixth of the income of this share. This contention is founded upon the argument that being an adopted daughter she is a child of James B. Freeman, within the meaning of the devise over in the will of Henry G. Freeman. We do not deem it necessary to consider in this appeal the question elaborately argued in the brief, as to whether there may be a valid partial exercise of a power of appointment, for no matter how that question might be determined, this appellant can take nothing. The bequest over in the will of Henry G. Freeman was to the children, the actual children of his sons and daughters, and those who are not in fact children do not meet the terms of the bequest. The adoption of the appellant, under the act of 1889, gave her the right to inherit from her adopting parent, and that right is complete. But this appellant is not claiming by inheritance from James B. Freeman, she asserts her right under the will of Henry G. Freeman. She is not a child of James B. Freeman, within the meaning of the will of his father. This question is distinctly ruled by Schafer v. Eneu, 54 Pa. 304. The decisions upon this question were referred to and ably discussed by President Judge RICE in Phillips's Estate, 17 Pa. Superior Ct. 103. In Kohler's Estate, 199 Pa. 455, the testator committed the distribution of the estate to the law, upon the happening of an event necessarily future, and it was held that he must reasonably be presumed to have contemplated the possibility of a change in the law in the meantime. There is nothing in that case which is not in entire harmony with the decisions above cited. The authority of Schafer v. Eneu, 54 Pa. 304, has been recognized and its doctrine reasserted in the recent case of Burnett's Estate, 219 Pa. 599. The questions presented by this record have been so fully considered in the authorities hereinbefore cited that further discussion is unnecessary.

The decree is affirmed and the appeal dismissed at cost of the appellant.