378 A.2d 780

**COMMONWEALTH of Pennsylvania**

v.

**James William SUTLEY and James D. Parker, Appellants.**

Supreme Court of Pennsylvania.

Argued March 11, 1975.

Decided Oct. 7, 1977.

William J. Rundorff, Henry J. Russo, Asst. Public Defenders, Mercer, for appellants.

Joseph J. Nelson, Dist. Atty., Robert F. Banks, Asst. Dist. Atty., Mercer, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT

NIX, Justice.

Appellants James William Sutley and James D. Parker were convicted in the Court of Common Pleas of Mercer County in unrelated prosecutions for possession of marijuana, a felony under the Drug, Device and Cosmetic Act of 1961, Act of September 26, 1961, P.L. 1664, § 4, 35 P.S. § 780–4 (1964) (now repealed). Appellant Sutley entered a plea of guilty to the charge and was sentenced on July 2, 1971, to a term of imprisonment for not less than one nor more than three years in a state correctional institution. Appellant Parker, who also pleaded guilty to the charge, was sentenced on March 3, 1972, to a term of one and one half to four years in a state correctional institution. No direct appeal was taken from the judgment of sentence by either appellant.

Thereafter, on April 14, 1972, the General Assembly enacted the Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, § 1, 35 P.S. § 780–101 et seq. (Supp.1976–77) which repealed and extensively revised the prior law governing this field.[1] Among the more significant changes, the new Act classified possession of marijuana as a misdemeanor, and the penalties for violation were accordingly reduced. The maximum sentence provided upon conviction for possession of more than thirty grams was up to one year of imprisonment and/or a five thousand dollar fine,[2] while possession of thirty grams or less resulted in no more than a thirty day prison term and/or a fine of one hundred dollars.[3]

1. See The Drug, Device and Cosmetic Act of 1961, Act of September 26, 1961, P.L. 1664, § 1, 35 P.S. § 780–1 et seq. (1964) (now repealed).

2. See Act of April 14, 1972, P.L. 233, No. 64, § 13(a)(16), (b), 35 P.S. § 780–113(a)(16), (b) (Supp.1976–77).

3. Id. § 13(a)(31), (g). Under the prior law, a first offense conviction for possession of any amount was subject to penalties including a fine not exceeding two thousand dollars and a term of incarceration in a state correctional institution for not less than two nor more than

The revised Act was subsequently amended by the legislature on July 25, 1973, to provide for the resentencing in certain cases of individuals convicted of possession of marijuana under the prior Act. The amended section provides in full as follows:

The provisions of this act shall not affect any act done, liability incurred, or right accrued or vested, or affect any suit or prosecution pending to enforce any right or penalty or punish any offense under the authority of any Act of Assembly, or part thereof, repealed by this act: Provided, however, That in any case final on or before June 12, 1972 in which a defendant was sentenced for the commission of acts similar to those proscribed by subsection (16) or (31), but not (30), of section 13(a) of this act, such defendant shall be resentenced under this act upon his petition if the penalties hereunder are less than those under prior law and in such case the prior criminal record of the defendant shall be expunged to the extent that such record shall no longer contain any reference to the prior grade of the offense if higher than the grade of the offense to which defendant is resentenced. Act of April 14, 1972, P.L. 233, No. 64, § 38, *as amended by* Act of July 25, 1973, No. 54, § 1, 35 P.S. § 780–138 (Supp.1976–77).

Appellants Sutley and Parker, in separate petitions filed with the Court of Common Pleas of Mercer County, sought resentencing under the amendment. It is conceded that both petitions alleged facts which, if proven would have required that appellants be resentenced in accordance with the amendment. A rule was issued upon the Commonwealth to show cause why the appellants should not be resentenced. The Mercer County District Attorney filed an answer to the petitions alleging only that the statute upon which appellants relied was unconstitutional. The lower court agreed and dismissed the petitions for resentencing. A timely appeal from the order dismissing the petitions was

five years. *See* Act of September 26, 1961, P.L. 1664, § 20(c), 35 P.S. § 780–20(c) (1964) (now repealed).

taken to the Superior Court, and that court certified the matter here for disposition.[4] We now affirm.

The court below determined that the 1973 amendment was constitutionally repugnant as violating the constitutional doctrine of separation of powers, because the enactment intruded upon the governor's power to commute sentences under Article IV, Section 9 of the Pennsylvania Constitution, Pa.Const. art. IV, § 9 (1968) and operated as a legislative impairment of existing final legal judgments. We agree that the amendment undermines and thus fatally interferes with final judgments of the judiciary and therefore we need not consider the alternative basis of constitutional invalidity relied upon by the court below.

We note at the outset that it is a fundamental principle in our conception of judicial authority that courts are not to inquire into the wisdom, reason or expediency behind a legislative enactment. *Commonwealth v. Moir,* 199 Pa. 534, 49 A. 351 (1901). Nor are the motives of the legislators in passing the act open to judicial consideration. *Commonwealth v. Keary,* 198 Pa. 500, 48 A. 472 (1901). Our inquiry in such cases can only be directed to the manner in which the legislature effectuates its will, to insure that the enactment does not transgress some specific constitutional prohibition.

The standards to be applied in making this determination are equally well settled. It is axiomatic that a legislative enactment is presumed to be constitutional.

> "There is, of course, a strong presumption in favor of the constitutionality of statutes—a presumption which reflects on the part of the judiciary the respect due to the legislature as a co-equal branch of government." (footnotes omitted) *School Districts of Deer Lakes and Allegheny Valley v. Kane,* 463 Pa. 554, 562, 345 A.2d 658, 662 (1975).

Accordingly, the burden rests on those alleging unconstitutionality to show that an enactment "clearly, palpably and

4. *See* Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(9), 17 P.S. § 211.202(9) (Supp.1976–77).

plainly" violates the constitution. *Tosto v. Pennsylvania Nursing Home Agency,* 460 Pa. 1, 331 A.2d 198 (1975); *Daly v. Hemphill,* 411 Pa. 263, 191 A.2d 835 (1963); *Rubin v. Bailey,* 398 Pa. 271, 157 A.2d 822 (1960); *Clark v. Meade,* 377 Pa. 150, 104 A.2d 465 (1954); *Lighton v. Abington Township,* 336 Pa. 345, 9 A.2d 609 (1939); *Sharpless v. Mayor of Philadelphia,* 21 Pa. 147 (1853).

■ We are satisfied in the instant case that the appellee has sustained its burden of demonstrating the unconstitutionality of the 1973 amendment. A plain reading of the enactment reveals that it is couched in mandatory language; it unquestionably directs that a defendant "shall be resentenced under this act upon his petition if the penalties hereunder are less than those under prior law . . . ." The amendment is, in operation and effect, a legislative command to the courts to open a judgment previously made final, and to substitute for that judgment a disposition of the matter in accordance with the subsequently expressed legislative will. The vesting in the legislature of the power to alter final judgments would be repugnant to our concept of the separation of the three branches of government.

■ The doctrine of the separation of governmental powers into the legislative, executive and judicial departments has been inherent in the structure of this Commonwealth's government since its inception.

This separation appeared in Pennsylvania as early as 1776 in the Plan or Form of Government for the Commonwealth or State of Pennsylvania, prepared by the convention in that year. The separation was continued in our constitutions of 1790, of 1838, and of 1873. Accordingly, when the Constitution of 1873 was adopted, the people acted in the light of generations of experience with the operation of the doctrine of the separation of powers, and with the resulting necessity for judicial review to resolve differences of opinion between the legislative, executive or judicial departments concerning the scope and extent of the delegated powers. *Dauphin County Grand Jury In-*

*vestigation Proceedings (No. 2)*, 332 Pa. 342, 352–53, 2 A.2d 804, 807 (1938) (footnote omitted). *See generally, Commonwealth ex rel. Carroll v. Tate,* 442 Pa. 45, 274 A.2d 193 (1971); *Pennsylvania Company v. Scott,* 346 Pa. 13, 29 A.2d 328 (1943); *Wilson v. Philadelphia School District,* 328 Pa. 225, 195 A. 90 (1937); *Commonwealth v. Mathues,* 210 Pa. 372, 59 A. 961 (1904); *De Chastellux v. Fairchild,* 15 Pa. 18 (1850); *Greenough v. Greenough,* 11 Pa. 489 (1849). Similarly, we have long recognized that the judicial branch is not subordinate to the other branches of government but is co-equal, distinct and independent.

> The judiciary is a constituent or coordinate part of government; it is not subordinate to other powers, nor does it depend for existence on the legislative will. Its powers come directly from the people, without intervening agency. From the very nature of its time-honored powers, it should be kept a separate, distinct and independent entity in government . . . The domain of the judiciary is in the field of the administration of justice under the law; it interprets, construes and applies the law. *Commonwealth v. Widovich, et al.,* 295 Pa. 311, 322, 145 A. 295, 299 (1929).

*See also Bedford v. Shilling,* 4 S. & R. 401, 410 (1818). Thus, it necessarily follows that any encroachment upon the judicial power by the legislature is offensive to the fundamental scheme of our government. *Bailey v. Waters,* 308 Pa. 309, 162 A. 819 (1932); *Ervine's Appeal,* 16 Pa. 256 (1851); *Greenough v. Greenough, supra.*

We recognize that the doctrine of the separation of powers was not intended to hermetically seal off the three branches of government from one another. It was obviously intended that there would be a degree of interdependence and reciprocity between the various branches. *Cf. Buckley v. Valeo,* 424 U.S. 1, 122, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). It is also true as noted by the dissenters that there may be some areas where the dividing lines between the respective responsibilities of the three branches may be difficult to

define.[5]  *Stander v. Kelley*, 433 Pa. 406, 422, 250 A.2d 474, 482 (1969).  However, a recognition that final judgments of the judicial branch are not to be interfered with by legislative fiat in this Commonwealth has long been established and is no longer open to serious question.  As early as 1859 this Court observed:

> In the very nature of things, a law that is enacted after the case has arisen can be no part of the case.  Such a law can have only a forced and unnatural relation to the case, and must produce an untrue decision;  a decision, not of the case arising between the parties, as it ought to be, but of a case partly created by the legislature.

> When, therefore, the constitution declares that it is the exclusive function of the courts to try private cases of disputed right, and that they shall administer justice "by the law of the land," and "by due course of law;" it means to say, that the law relating to the transaction in controversy, at the time when it is complete, shall be an inherent element of the case, and shall guide the decision; and that the case shall not be altered, in its substance, by any subsequent law.

*Menges v. Dentler*, 33 Pa. 495, 498–9 (1859).

We further explicated this concept in our decision in *Pennsylvania Co. v. Scott*, 346 Pa. 13, 16–17, 29 A.2d 328, 329 (1942):

> "It is elementary that the legislature may not, under the guise of an act affecting remedies, destroy or impair final judgments obtained before the passage of the act, and this principle prohibits not only a statutory re-opening of cases previously decided by the court but also legislation affecting the inherent attributes of judgments .  .

---

**5.**  The fact that the distinctions in some areas may be obscure does not lessen the responsibility of this Court to be ever vigilant for any encroachment upon the authority of the judicial branch.

"It has become the duty of the court to temporize no longer, but to resist, temperately, though firmly, any invasion of its province, whether great or small." *De Chastellux v. Fairchild*, 15 Pa. 18, 21 (1850).

. There are two reasons for this limitation of legislative power; . . . that under our system of the division of governmental powers the legislature cannot invade the province of the judiciary by interfering with judgments or decrees previously rendered."

Again in *Leahey v. Farrell,* 362 Pa. 52, 66 A.2d 577 (1949), we reaffirmed the proposition that a legislative attempt to alter the effect of final judicial action imposed under prior law is a direct assault upon the power of the judicial branch:

The legislature cannot, by an act of assembly, overrule a judicial decision: *Greenough v. Greenough,* 11 Pa. 489; it may not direct a statute to be construed in a certain way: *In re East Grant Street,* 121 Pa. 596, 16 A. 366; *Titusville Iron Works v. Keystone Oil Co.,* 122 Pa. 627, 15 A. 917; it cannot grant a new trial: *De Chastellux v. Fairchild,* 15 Pa. 18; or order an illegitimate child to be regarded as legitimate under terms of prior deed: *Appeal of Edwards,* 108 Pa. 283; *it may not change the effect of judgments or decrees previously rendered: Pennsylvania Company, etc., v. Scott,* 346 Pa. 13, 29 A.2d 328.

Id. 362 Pa. at 56, 66 A.2d at 579 (emphasis added).

Thus, it is clearly established in this jurisdiction that even though the legislature possesses the power to promulgate the substantive law,[6] judicial judgments and decrees entered pursuant to those laws may not be affected by subsequent legislative changes after those judgments and decrees have become final. Conceding the inviolability of final judgments of the judiciary, even though the legislature possesses the broad power to enact the substantive law, it is difficult to appreciate the thrust of appellants' argument that the result should be different in this instance because the legislature has the right to prescribe the permissible range of punishment to be meted out for crimes. The legislature's right to promulgate the penal sanctions for the various offenses is only a small segment of its broader power

6. Art. II, Sec. 1 provides: "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."

to promulgate all of the substantive law for this jurisdiction. Appellants have failed to suggest any reason for carving an exception where the power to regulate sentences is involved. To the contrary, our caselaw indicates that the same principles obtain.[7]

This Court has long recognized the applicability of the principles of "the inviolability of final judgments of the judiciary" in criminal cases as well as in civil cases. As early as 1862, this Court held that a statute providing for a graduated deduction from the term of imprisonment for which a prisoner was sentenced, as a reward for good conduct, was a constitutionally impermissible interference with the final judgment of our courts. *Commonwealth ex rel. Johnson v. Halloway*, 42 Pa. 446 (1862).

It is to be observed, that these questions have no reference to the power of the legislature to prescribe a general rule of law that shall be inconsistent with a previous judicial decree. Such a rule, when it operates on future cases and not retrospectively, is quite legitimate. Their power to legislate in that manner is not to be doubted. But under the act in question the good conduct of a particular individual, under judicial sentence, is to work out for him an abatement of a part of his sentence. In respect to one of the relators who was convicted and sentenced before the law was passed, it is considered very clear that it is a legislative impairing of an existing legal judgment.

7. The power of sentencing is one of the most critical and important duties vested in the judiciary. It is exercised on a case-by-case basis, after careful attention has been given to a myriad of facts including the gravity of the offense, the rehabilitative needs of the defendant and the necessity to adequately protect the public.

Pennsylvania's procedure of indeterminate sentencing carries with it an implicit adoption of the philosophy of individual sentencing. This necessitates the granting of broad discretion to the trial judge, who must determine, among the sentencing alternatives and the range of permissible penalties, the proper sentence to be imposed. The importance of this discretion cannot be overemphasized; many commentators argue that it is one of the most important . . . powers vested in the trial court today.

*Commonwealth v. Martin*, 466 Pa. 118, 130–31, 351 A.2d 650, 656–57 (1976) (footnotes omitted).

Id. at 448.

This language was cited with approval in *Commonwealth v. Scoleri*, 399 Pa. 110, 134–5, 160 A.2d 215, 227–28, *cert. denied*, 364 U.S. 849, 81 S.Ct. 93, 5 L.Ed.2d 72 (1960); see also, *Commonwealth ex rel. Haun v. Cavell*, 190 Pa.Super. 346, 154 A.2d 257 (1959).

Appellants' argument that the legislature's power to determine the penological system for this state prevents a usurpation of judicial power in these cases was addressed and answered by this Court in *Commonwealth ex rel. Banks v. Cain*, 345 Pa. 581, 28 A.2d 897 (1942). There, in a learned opinion by Mr. Justice (later Chief Justice) Stern, it was noted that although the General Assembly had the power to provide the courts such measure of discretion in the imposition of sentences as it deemed proper, once that discretion had been exercised in accordance with existing law a final judgment of sentence could not be disturbed by a subsequent legislative change.

"While the court determines the guilt or innocence of the accused and pronounces upon the guilty the penalty provided by law, the manner of executing the sentence is prescribed by the legislature, to be put in force and effect by administrative officers.

"The exercise of the power of parole being but an administrative function which does not impinge upon the judicial power of sentencing the accused in conformity with the law, it follows that the present act may constitutionally be applied to cases where sentences were imposed before its effective date. The sentence is in no wise interfered with, especially since the act provides that a parole cannot be granted until the expiration of the minimum term prescribed by the court. The parolee is not discharged, but merely serves the remainder of his sentence by having his liberty restrained in a manner analogous to that employed in the 'trusty' or 'honor' system of prison discipline. 'The parole authorized by the statute does not suspend sentence or operate to shorten the term.'

.    .    .    .    .

"*It is only if the duration of the sentence is not affected that a parole does not infringe upon judicial power*; therefore we are of opinion that the portion of section 21 which attempts to give to the board the power to extend the period of parole beyond the maximum term imposed by the sentence, and section 24, which attempts to give to the board the power to discharge a parolee before the expiration of the parole period, are unconstitutional. *The fixing of the term of the sentence is exclusively a judicial function.*"

*Id.* 345 Pa. at 588–89, 28 A.2d at 901 (footnote omitted) (emphasis added).

It is argued that the *Cain* Court in permitting the application of a statute providing for parole to be applicable to sentences that were final at the time of its enactment was an implicit rejection of the "inviolability of final judgments" concept at least with respect to the right of the legislature to modify existing judicially-imposed sentences. This argument ignores the clear thrust of the *Cain* decision and misperceives the nature of the court's sentencing power. The *Cain* opinion stressed the fact that the parole power did not impinge upon the traditional judicial function involved in the sentencing process.

"It is not  .   .   .  an interference with judicial authority, nor an assumption of judicial power, for the supervisors of penal institutions to administer the very conditions of punishment or clemency which the law prescribed and itself wrote into the judge's sentence. Where conditions of punishment are beforehand prescribed, and form constituent parts of the sentence of conviction, it is not an assumption of judicial power for an administrative officer, acting within the law and the terms of the sentence, to take upon himself the task of ascertaining whether the conditions have been complied with. While the court determines the guilt or innocence of the accused and pronounces upon the guilty the penalty provided by law, the manner of executing the sentence is prescribed by the legislature, to be put in force and effect by administrative officers."

*Id.* 345 Pa. at 588, 28 A.2d at 901, quoting in part from *State v. Page,* 60 Kan. 664, 668, 57 P. 514, 516. (footnote omitted).

Although in Pennsylvania, indeterminate sentences are commonplace, Act of June 19, 1911, P.L. 1055, § 6 as amended, 19 P.S. § 1057 (1964), we have frequently stated that the legal sentence is the maximum sentence. *Commonwealth ex rel. Carmelo v. Smith,* 347 Pa. 495, 32 A.2d 913 (1943); *Commonwealth v. Campbell,* 196 Pa.Super. 380, 175 A.2d 324 (1961), *cert. denied,* 371 U.S. 901, 83 S.Ct. 203, 9 L.Ed.2d 164, reh. den., 371 U.S. 959, 83 S.Ct. 498, 9 L.Ed.2d 507; *Commonwealth ex rel. Monaghan v. Burke,* 169 Pa.Super. 256, 82 A.2d 337 (1951), *cert. denied,* 342 U.S. 898, 72 S.Ct. 233, 96 L.Ed. 673; *Commonwealth ex rel. Byers v. Burke,* 164 Pa. Super. 438, 65 A.2d 424 (1949); *Commonwealth ex rel. Webb v. Cain,* 158 Pa.Super. 222, 44 A.2d 606 (1945). The reason being that while the minimum sentence determines parole eligibility, *Commonwealth v. Butler,* 458 Pa. 289, 328 A.2d 851 (1974). *See generally,* Act of Aug. 6, 1941, P.L. 861, §§ 1–34, as amended, 61 P.S. §§ 331.1–331.34 (Supp.1974), the maximum sets forth the period of time that the state intends to exercise its control over the offender for his errant behavior. The judicial discretion is the determination of the period of control over the person of the offender in view of the nature of the crime, the background of the defendant and the other pertinent considerations for such a decision. *See Commonwealth v. Martin,* 466 Pa. 118, 351 A.2d 650 (1976). It is this exercise of discretion that the rule of the "inviolability of final judgment" seeks to protect. The institution in which the sentence is to be served, the objects sought to be accomplished during this period of control and all of the other penological considerations are not primarily judicial functions. Thus the *Cain* Court properly concluded that those portions of the statute which did not alter the judicial decision as to the length of time of state control over the offender did not impinge upon the traditional judicial sentencing power and thus did not alter

or modify the judicial sentence which had become final.[8] On the other hand, that Court found unconstitutional those provisions of the Act in question which would have permitted an alteration of the duration of the sentence.

In Pennsylvania we embraced the concept of a tripartite government with three equal, separate and autonomous branches in an effort to prevent governmental power from becoming concentrated into a single body. *See Commonwealth ex rel. Carroll v. Tate, supra; Commonwealth v. Mathues, supra; De Chastellux v. Fairchild, supra.* It was believed that each branch would act as a check on the other and by this diffusion of power prevent tyranny where the rights of the individual citizen would be ignored. *See generally, Commonwealth ex rel. Carroll v. Tate, supra; Wilson v. Philadelphia School District, supra; Commonwealth v. Mathues, supra; De Chastellux v. Fairchild, supra.* While this consideration motivated the adoption of this form of government, now that this format is firmly entrenched there are other considerations which require the perpetuation of the principle of the "inviolability of final judgment."[9] One such

**8.** While the *Cain* Court suggested that even a legislative interference with the minimum sentence might constitute an unwarranted usurpation of judicial authority, we need not in this opinion reach that question. *Commonwealth ex rel. Banks v. Cain*, supra, 345 Pa. at 588, 28 A.2d at 901.

**9.** The dissenters argue that the issue raised herein falls within the gray area and that we should not condemn legislation as violating the "separation of powers" doctrine in such a case unless it goes to the very heart of that doctrine, i. e., creating that type of tyrannical situation that threatens individual rights. As we have indicated, the precedent in this jurisdiction has made it abundantly clear that we have long recognized a legislative attempt to alter, modify or nullify a final judicial judgment or decree as a usurpation of judicial authority. For this reason alone the argument is unpersuasive.

Moreover we do not believe that we should adopt such a myopic view where there is a claimed violation of the "separation of powers" doctrine. While the dissenters are correct in observing that a tripartite government was selected because of the desire to avoid the tyranny which frequently flows from a government where the total power is centralized in a single source rather than from a consideration of the efficiency that might be obtained from a diffusion of governmental power, it does not follow that we should display a callous disregard to the effect of such legislative action upon the

example was alluded to in *Commonwealth ex rel. Johnson v. Halloway, supra.* In that decision this Court pointed out that the subsequent statute might well have frustrated the sentencing decision because it introduced factors not considered at the time the sentence was imposed. An even more graphic example of how a retroactive application can completely frustrate the judicial discretion and bring about a miscarriage of justice can be found in the appeal of Mr. Sutley. Although the court accepted a plea of possession of marijuana, the testimony of the arresting officer established a clear case of sale. Trooper Oliver's statement indicated that on September 12, 1970, at approximately 5:20 P.M., he purchased from James W. Sutley a substance which was later identified to be marijuana. At the time of the sentencing hearing, which was conducted by a judge other than the one who had accepted the plea, the following statement occurred:

> THE COURT: Well, the problem we've had concerning Mr. Sutley all along is where he is going to live and what he is going to do. We've had him living at various places. We had him on the work release program for four days when it turned out he was busted, arrested for this charge of selling marihuana. I don't know why the District Attorney reduced it down to possession. It appeared as if the offense was reasonably clear. I didn't take the plea.

It appears that although the sentencing judge was convinced that the offense amounted to a sale of a controlled substance rather than merely possession, he was nevertheless content to proceed with sentencing in view of the flexibility afford-

efficient operation of a component part of our government when a dispute arises as to their respective areas of responsibility. We do not believe that the rights of the citizens are unaffected where the proposed legislation results in emasculating one of the branches of government so as to render it incapable of performing effectively its assigned responsibilities.

Nor do we believe that the harm is ameliorated because the provision has general application rather than being aimed at individual instances. While this factor permits the provision to comport to the constitutional provision prohibiting special legislation, *see* Pa. Const. art. 3, § 32 (1968), it does not avoid the prime evil, i. e., that it is a legislative usurpation of judicial authority.

ed to him under the sentencing provisions of the former Act.[10] We are therefore faced with a situation which is quite commonplace where a plea to a lesser offense is accepted because the sentence range for that offense affords the court an adequate opportunity to punish the offender for the actual conduct committed. If, however, the new Section is held to apply in this instance and a resentencing is required, the court is powerless to impose a new sentence which would be commensurate with the true nature of the offense. Thus, not only does such a result completely distort the exercise of judicial discretion which permitted the plea to the lesser offense, but it also frustrates the legislative purpose sought to be achieved by a new Act since the new provision was specially designed only for those who committed the crime of possession and not for those who were engaged in the unlawful sale or distribution of controlled substances.[11]

Finally, the dissenting opinion by Mr. Justice ROBERTS raises the question of whether the Amendment may be justified on the basis of the exercise of the pardoning power of the legislature. Initially, it should be noted that this question was not raised by the litigants themselves. Ordinarily such issues should therefore not be considered sua sponte by an appellate court. *Phillips Home Furnishings, Inc. v. Continental Bank*, 467 Pa. 43, 354 A.2d 542 (1976); *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975). *See also Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). However, since we are sustaining the trial court's findings of unconstitutionality and because the mat-

10.  *See* n. 3, *supra*.

11.  Similarly, the evidence adduced at the sentencing hearing of appellant Parker established that although he too had entered a plea of guilty to mere possession of marijuana, Parker was in fact involved in the distribution of the substance to juveniles. The trial judge however accepted the plea because he believed the punishment for that crime was too severe. While the dissenters argue that the statute promotes uniformity, under these circumstances, it would distort the very purpose of the legislative amendment to permit this appellant to reap the benefit of the resentencing provision.

ter is one of public concern, we will discuss the merits of this contention.

Relying upon the federal constitution and various decisions of the federal courts, the dissent attempts to develop the theory that our legislature possesses an inherent power of pardon. "[T]he legislature has the power to enact legislation which reduces the punishment of individuals whose convictions have become final or which pardons such individuals, exempting them from further punishment and relieving them from any legal disabilities resulting from conviction." Dissenting opinion, ROBERTS, J. (infra p. 792) While it is appealing at first blush to analogize that such a concept has been adopted in this jurisdiction as well, it must be emphasized that we are here concerned with those powers enumerated under our state constitution.

Article IV Section 9 of the State Constitution expressly provides:

> (a) In all criminal cases except impeachment, the Governor shall have power to remit fines and forfeitures, to grant reprieves, commutation of sentences and pardons; but no pardon shall be granted, nor sentence commuted, except on the recommendation in writing of a majority of the Board of Pardons, after full hearing in open session, upon due public notice. The recommendation, with the reasons therefor at length, shall be delivered to the Governor and a copy thereof shall be kept on file in the office of the Lieutenant Governor in a docket kept for that purpose.

Further, the composition of the Board of Pardons is set forth by paragraph (b) of the same section of the Constitution:

> "It shall consist of the lieutenant governor who shall be the chairman, the attorney general and three members appointed by the governor with the consent of two-thirds of the members elect of the Senate   .   .   ."

The specificity in defining the limitations of the express grant of the power of pardon would negate an inference that the Constitution intended to confer an implied power of pardon free of any restrictions in another branch of govern-

ment. It would require an unwarranted distortion of the express language of our Constitution to infer that an implied power of pardon was conferred in the legislature by that document.

■ While the federal courts have adopted the principle of the English common law which recognized an inherent power of pardon in the legislative branch under that body's supreme lawmaking power, *see United States v. Hughes*, 175 F. 238 (W.D.Pa.1892) and *United States v. Hall*, 53 F. 352 (W.D.Pa.1892), there is nothing in the jurisprudence of this Commonwealth to suggest that we have accepted that concept as part of our governmental system. , To the contrary, our caselaw has shown the exclusivity of the power as vested in the executive branch. *Commonwealth ex rel. Banks v. Cain, supra*, 345 Pa. at 585, 28 A.2d at 899–900. *See also Commonwealth ex rel. Cater v. Myers*, 412 Pa. 67, 194 A.2d 185 (1963). While the law permits a liberal construction of our Constitution, *Likens' Petition*, 223 Pa. 456, 72 A. 858 (1906), a power does not inhere to the legislature if it has specifically been withheld or entrusted to another co-equal branch of government. *See Commonwealth ex rel. Kelley v. Keiser*, 340 Pa. 59, 16 A.2d 307 (1940).

■■ Not only do we find that there is no power of pardon or commutation in the legislature and that the power is specifically and singularly granted to the executive branch, but it is equally clear from the very language of the resentencing amendment that the legislature was not attempting to exercise the power of pardon.[12] As defined by this Court, pardon is:

"the exercise of the sovereign's prerogative of mercy. It completely frees the offender from the control of the state. It not only exempts him from further punishment but relieves him from all the legal disabilities resulting

12. The power of commutation is an adjunct of the pardoning power, and can be granted only by the authority in which the pardoning power resides, Bouvier, Law Dictionary, Vol. I (Rawle Rev.1914). Therefore our finding that the legislative branch does not possess the power of pardon necessarily means that it also does not have the power of commutation.

from his conviction. It blots out the very existence of his guilt, so that, in the eye of the law, he is thereafter as innocent as if he had never committed the offense: *Diehl v. Rodgers*, 169 Pa. 316, 319, 32 A. 424, 425; *Commonwealth v. Quaranta*, 295 Pa. 264, 273, 145 A. 89, 93; *Commonwealth v. House*, 10 Pa.Super. 259, 264, 265."

*Commonwealth ex rel. Banks v. Cain, supra*, 345 Pa. at 584–5, 28 A.2d at 899.

The amendment in question in no way relieves the offender from all legal disabilities resulting from his conviction. Instead, it requires his resentencing if the penalty under the new law is less than that under the prior law and further, provides for an expungement of his record for the prior offense only to the extent where the grade of the prior offense is greater than the offense to which he was resentenced. Thus, the legislature specifically intended that the individual would still be required to serve a sentence and the stigma attached to the conviction would remain.

Accordingly, the Order of the Court of Common Pleas of Mercer County is affirmed.

JONES, former Chief Justice did not participate in the decision of this case.

POMEROY, J., files a concurring opinion.

ROBERTS, J., files a dissenting opinion.

MANDERINO, J., files a dissenting opinion.

POMEROY, Justice, concurring.

I join in the opinion of the Court, and add these few supplemental lines only to sharpen the focus of decision as I see it.

Obviously, the legislature had second thoughts about the severity of the punishment it had decreed for violation of the Drug, Device and Cosmetic Act of 1961, Act of September 26, 1961, P.L. 1664, § 4, 35 P.S. § 780–4 (1964), where that violation consisted of possession (not the sale or delivery) of the drug marijuana. By the Act of 1972, it reduced

the offense from a felony to a misdemeanor, with corresponding lessening of sentences. It is the attempt to make this amelioration of the offense applicable to offenders convicted under the prior law that is here in issue.

Unfortunately for appellants and others in like cases, their judgments of sentence had become final before enactment of the new law.

While the attempt of the General Assembly to rectify what it must have considered to be an inequitable punishment visited upon prior offenders is laudable, I agree with the Court that relief must come in some fashion other than mandatory resentencing and expunging from the criminal records the fact of conviction of a felony. The concept of the finality of judgments and the integrity of the judicial process would, I fear, be seriously jeopardized were the understandable effort of the legislature in this situation to be validated. Courts may sentence only for acts made criminal by the legislature and may do so only within limits set by the legislature. When, however, those steps are taken, they are judicial acts, and in my view may not be undone by the legislature because it has come to believe that its prior treatment of the offense was mistaken.*

ROBERTS, Justice, dissenting.

In 1972, the Legislature enacted the Controlled Substance, Drug, Device and Cosmetic Act [Controlled Substance Act],[1] which replaced the Drug, Device and Cosmetic Act.[2] The Controlled Substance Act substantially reduced the penalties for possession of marijuana. Compare section 13(g) of the Controlled Substance Act[3] (imprisonment not to exceed

* This statement is not meant to implicate the pardoning power.

1. Act of April 14, 1972, P.L. 233, §§ 1 et seq., 35 P.S. §§ 780–101 et seq. (Supp.1977).

2. Act of September 26, 1961, P.L. 1664, §§ 1 et seq., as amended, formerly codified in 35 P.S. §§ 780–1 et seq. (1964), repealed, 35 P.S. § 780–143(a) (Supp.1977).

3. 35 P.S. § 780–113(g) (Supp.1977).

thirty days for possession of a small amount of marijuana for personal use) with section 20(c) of the Drug, Device and Cosmetic Act[4] ("imprisonment by separate or solitary confinement at labor of not less than two (2) or more than five (5) years" for possession of marijuana, including possession of a small amount for personal use).   When it enacted the Controlled Substance Act, the Legislature made the reduced penalties of the Act applicable not only to crimes committed after its effective date, but to crimes committed earlier if the convictions were not yet final on the Act's enactment date.[5]   35 P.S. § 780–139 (Supp.1977);[6] *Commonwealth v. Thomas,* 450 Pa. 548, 301 A.2d 359 (1973).   In 1973, the Legislature enacted an amendment to the Controlled Substance Act [Resentencing Amendment][7] which made the reduced penalties of the Controlled Substance Act applicable to persons whose convictions became final before the adoption of the Controlled Substance Act.

4.  Act of September 26, 1961, P.L. 1664, § 20(c), as amended, formerly codified in 35 P.S. § 780–20(c) (1964), repealed, 35 P.S. § 780–143(a) (Supp.1977).

5.  Thus, if appellant Parker had gone to trial instead of pleading guilty, and as a result had been sentenced after April 14, 1972 instead of on March 3, 1972, the reduced penalties of the Controlled Substance Act would have applied.   Similarly, if appellant Sutley, who was sentenced on July 2, 1971, following his guilty plea, had gone to trial and appealed to the Superior Court, it is likely that his conviction would not have become final until after April 14, 1972, and the reduced penalties would have applied.   See *Commonwealth v. Thomas,* 450 Pa. 548, 301 A.2d 359 (1973).

6.  While other sections of the Controlled Substance Act became effective on June 14, 1972, this section became effective immediately on the Act's April 14, 1972 enactment date.

7.  Act of July 25, 1973, P.L. 219, § 1, 35 P.S. § 780–138 (Supp.1977). This section provides, in pertinent part:
    "That in any case final on or before June 12, 1972 in which a defendant was sentenced for the commission of acts similar to those proscribed by subsection (16) [possession of a controlled substance] or (31) [possession of a small amount of marijuana for personal use] but not (30) [manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance], of section 13(a) of this act [18 P.S. § 780–113(a)], such defendant shall be resentenced under this act upon his petition if the penalties hereunder are less than those under prior law  .  .  .."

The Resentencing Amendment reflects a legislative decision that, to the fullest extent possible, all persons should be treated equally for the same substantive conduct. The majority holds that the Resentencing Amendment is an unconstitutional infringement on the powers of the judiciary. I dissent because the Resentencing Amendment is a proper exercise of legislative power, which in no way interferes with or infringes upon the powers of the judiciary.

## I

The separation of powers among the legislative, executive, and judicial branches of government is central to our constitutional scheme. Yet the dividing lines among the three co-equal branches "are sometimes indistinct and are probably incapable of any precise definition." *Stander v. Kelley,* 433 Pa. 406, 421–22, 250 A.2d 474, 482 (1969) (plurality opinion). The Constitution does not comprehend the total separation of the three branches of government. *Buckley v. Valeo,* 424 U.S. 1, 121, 96 S.Ct. 612, 683, 46 L.Ed.2d 659 (1976). As Justice Holmes wrote:

> "The great ordinances of the Constitution do not establish and divide fields of black and white. Even the more specific of them are found to terminate in a penumbra shading gradually from one extreme to the other.

> . . . . .

> It does not seem to need argument to show that however we may disguise it by veiling words we do not and cannot carry out the distinction between [the powers of the separate branches] with mathematical precision and divide the branches into water tight compartments."

*Springer v. Philippine Islands,* 277 U.S. 189, 209–11, 48 S.Ct. 480, 485, 72 L.Ed. 845 (1927) (dissenting opinion).

The impossibility of making a neat separation among legislative, executive, and judicial powers requires accommodation among the three branches:

> "Under the system of division of governmental powers it frequently happens that the function of one branch may overlap another. But the successful and efficient adminis-

tration of government assumes that each branch will cooperate with the others."

*Leahey v. Farrell,* 362 Pa. 52, 57, 66 A.2d 577, 579 (1949) (emphasis deleted). This need for accommodation, while preserving the essential features of the separation of powers, requires a close inquiry, on a case by case basis, into actions alleged to violate the principle of separation of powers. The problem does not easily lend itself to rigid, simplistic rules. Unlike the majority, I do not believe this case can be decided without careful consideration of the principles which underlie the separation of powers doctrine.

To decide whether legislative action offends the principle of separation of powers, we must look to the purposes of the doctrine.

> "This 'separation of powers' was obviously not instituted with the idea that it would promote governmental efficiency. It was, on the contrary, looked to as a bulwark against tyranny."

*United States v. Brown,* 381 U.S. 437, 443, 85 S.Ct. 1707, 1712, 14 L.Ed.2d 484 (1965). In reviewing legislative actions alleged to infringe on the province of the judiciary, we must be especially mindful of the need to preserve a separation of powers in order to protect the rights of the individual:

> " ' "Were the power of judging joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control, for *the judge* would then be *the legislator.*" ' "

*Buckley v. Valeo,* 424 U.S. at 120, 96 S.Ct. at 683, quoting The Federalist No. 47 (J. Madison), quoting Montesquieu (emphasis in original).

Legislative infringement on the province of the judiciary, and the concomitant threat to individual liberties, may take one of two forms. First, the Legislature may take action which impairs the independence of the judiciary, either by requiring the performance of non-judicial functions, see *United States v. Ferreira,* 54 U.S. (13 How.) 40, 14 L.Ed. 42 (1852), or by interfering with the power of the judiciary to perform its essential functions, see *Commonwealth ex rel.*

*Carroll v. Tate,* 442 Pa. 45, 274 A.2d 193 (1971) (plurality opinion); *Stander v. Kelley,* 433 Pa. at 427–28, 250 A.2d at 486 (1969) (Concurring Opinion of Roberts, J., joined by Jones and Pomeroy, JJ.). Second, the Legislature may usurp the power of the judiciary by taking it upon itself to judge individual cases. This latter infringement on the province of the judiciary is specifically prohibited by the bill of attainder clause. U.S.Const. art. I, § 10; Pa.Const. art. I, § 18. See also U.S.Const. art. I, § 9, cl. 3.

The Legislature's effort in the Resentencing Amendment to equalize sentences among individuals convicted for marijuana possession does not offend these principles. The Resentencing Amendment does not involve an attempt by the Legislature to judge individual cases. Nor does it impair the independence of the judiciary: the courts are not required to perform non-judicial functions, and the courts' capacity to perform their essential functions is not affected.

The Resentencing Act is a statute of general application, representing a policy determination that the sentences being served by a certain class of offenders should be reduced to be comparable to those of other offenders found guilty of the same conduct but sentenced under a later statute. Enactment of such a rule of general application is a proper legislative function:

> " 'It is the peculiar province of the legislature to prescribe general rules for the government of society; the application of those rules to individuals in society would seem to be the duty of the other departments.' "

*United States v. Brown,* 381 U.S. at 446, 85 S.Ct. at 1713, quoting *Fletcher v. Peck,* 10 U.S. (6 Cranch.) 87, 136, 3 L.Ed. 162 (1810). As a general rule which leaves to the judiciary the power to impose sentences on the individuals to whom it applies, the Resentencing Amendment does not violate the separation of powers. Rather than impairing or usurping the power of the judiciary, enactment of legislation such as the Resentencing Amendment is peculiarly within the province of the Legislature.

## II

The distribution of power among the three branches of government assigns to the Legislature the power to define criminal offenses and determine what punishments would be imposed. As this Court stated in *Commonwealth v. Glover,* 397 Pa. 543, 545, 156 A.2d 114, 116 (1959):

"There is no question that it is within the province of the legislature to pronounce what acts . . . are crimes and to fix the punishments of all crimes . . . . The legislature has the right to fix the maximum and likewise can, if it sees fit, name the minimum. If it does so it does not thereby violate Article V, Section 1 of the Constitution, vesting judicial power in the courts."

Subject to specific constitutional protections, such as the prohibition against cruel and unusual punishment, U.S. Const. amend. VIII, XIV; Pa.Const. art. I, § 10, and the prohibition against *ex post facto* laws, U.S.Const. art. I, § 10; Pa.Const. art. I, § 17, the Legislature may, through the enactment of standards of general applicability, exercise complete control over sentencing. See *United States v. Lewis,* 300 F.Supp. 1171 (E.D.Pa.1969).

The Legislature's power to define criminal offenses, and determine the range of punishments which may be imposed, encompasses the power to decide that the punishment for certain conduct should be reduced or eliminated. It also encompasses the power to reduce or eliminate the punishment of classes of offenders who have been convicted and sentenced, but whose convictions have not yet become final. See *Commonwealth v. Thomas,* 450 Pa. 548, 301 A.2d 359 (1973). Finally, I believe that the Legislature has the power to enact legislation which reduces the punishment of classes of offenders whose convictions have become final, or which pardons such offenders, exempting them from further punishment and relieving them from any legal disabilities resulting from conviction. See *United States ex rel. Malesevic v. Perkins,* 17 F.Supp. 851 (W.D.Pa.1936); *United States v. Hughes,* 175 F. 238 (W.D.Pa.1892); *United States v. Hall,* 53

F. 352 (W.D.Pa.1892) (verbatim repetition of *Hughes* ).[8] See generally Comment, Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation, 121 U.Pa.L.Rev. 120, 147 (1972).

Historically, general pardons have more commonly been granted by legislatures than by the executive. Weihofen, Legislative Pardons, 27 Calif.L.Rev. 371, 375 (1939). As a grant of a general pardon involves the adoption of a general rule applicable to a class of offenders, it is appropriate that this power be exercised by the Legislature:

> "[T]he power to exercise clemency in a particular case, and in favor of an individual or individuals, . . . charged with the offense [is] an executive act of a quasi judicial kind, . . . while an amnesty act establishes a general rule . . . applicable to all persons or persons of a given class, [which is] more especially an act legislative in nature."

*State v. Bowman,* 145 N.C. 452, 454, 59 S.E. 74, 75 (1907); see *Brown v. Walker,* 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896).

The Pennsylvania Constitution does not prohibit legislative pardons, at least where the pardon is pursuant to a law of general applicability, rather than special legislation enacted only to benefit particular offenders.[9] See Lusky, Con-

---

**8.** These federal cases deal with legislative pardons granted pursuant to the Act of March 31, 1860, P.L. 382, § 181, 19 P.S. § 893 (1964); repealed in part, Act of June 24, 1939, P.L. 872, § 1201, 18 P.S. § 5201 (1963). The pardons did not take effect until after the individuals pardoned had served their sentences, and the pardons therefore only had the effect of removing the disabilities resulting from conviction. Nevertheless, these cases treated the Pennsylvania statute as legislation granting pardons, and recognized the power of the Pennsylvania Legislature to grant legislative pardons.

**9.** A legislative provision for resentencing applicable to a general class of offenders does not infringe on the executive's power to pardon and commute sentences. The constitutional provision granting the executive power to pardon, Pa.Const. art. IV, § 9, is not exclusive by its terms, and there is no reason to construe it as exclusive. The executive's pardon power, with its requirement of a recommendation by the Board of Pardons after a full hearing, see id., is best suited to decide whether particular individuals should be

gressional Amnesty for War Resisters: Policy Considerations and Constitutional Problems, 25 Vand.L.Rev. 525 (1972). Compare Weihofen, Legislative Pardons, 27 Calif.L. Rev. 371 (1939) (legislatures have power to pardon) with Radin, Legislative Pardons: Another View, 27 Calif.L.Rev. 387 (1939) (distinction must be made between general pardons—or amnesties—and individual pardons,[10] and the power of the legislature does not extend to the latter).

It is the Legislature which is constitutionally empowered to set the punishment for criminal conduct. Since the Legislature's control over the determination of what conduct should be made criminal, and what punishments should apply, includes the power to grant a general pardon, it must also include the authority to provide for reduced sentences for a class of offenders convicted of a particular crime.

Unquestionably, the Legislature has the power to provide for reduced sentences for marijuana possession, as it did in the Controlled Substance Act. The subsidiary judgment as to whether individuals whose convictions have become final should benefit by such a change in legislation is appropriately a matter of legislative choice. See Comment, Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation, 121 U.Pa.L.Rev. 120, 147

pardoned or have their sentences commuted. The Legislature is better equipped to decide the issues pertaining to general pardons. Thus, the executive's power to pardon does not impliedly prohibit the Legislature from enacting statutes in the nature of general pardons:
"Although the Constitution vests in the President 'power to grant reprieves and pardons for offenses against the United States, except in cases of impeachment,' this power has never been held to take from Congress the power to pass acts of general amnesty . . . . "
*Brown v. Walker*, 161 U.S. at 601, 16 S.Ct. at 648.

10. "Amnesty, or general pardon, and pardon proper, result in the same thing. . . . The difference between amnesty and pardon —'general' or 'special pardon,' if one likes—lies . . . in the character of the act. The one [pardon] remits punishment to a named person. The other [amnesty] remits punishment of an offense, without particular reference to those who committed it." Radin, Legislative Pardons: Another View, 27 Calif.L.Rev. 387 (1939).

(1972). See also Pa.Const. art. I, § 17.[11] The Resentencing Amendment was enacted to permit those whose sentences were imposed before the Controlled Substance Act was adopted to be resentenced so that their sentences would conform, as nearly as possible, with sentences imposed on those convicted after the adoption of the Controlled Substance Act. While the Pennsylvania Constitution does not require that those sentenced before the adoption of ameliorative legislation receive the benefits of that legislation, it should not be interpreted to prohibit the Legislature from equalizing the treatment of such offenders when it considers such treatment to serve the public interest. The power to determine what classes of offenders should benefit by the reduced penalties provided for in the Controlled Substance Act is a necessary incident to the Legislature's power to enact legislation, such as the Controlled Substance Act, which changes the penalties for certain crimes.

### III

The majority concludes that the Resentencing Amendment is an unconstitutional violation of the separation of powers because it has the effect of altering final judgments. I cannot agree.

The majority relies on a general rule recognizing "the inviolability of final judgments of the judiciary." There is no such general rule. Rather, the Pennsylvania Constitution has several specific prohibitions which restrict the power of the Legislature to alter final judgments. E. g., Pa.Const. art. I, § 10 (no taking without just compensation); art. I, § 17 (no law may impair the obligation of contracts); art. III, § 32 (the Legislature may not pass any *local or special*

---

11. The *ex post facto* clause, Pa.Const. art. I, § 17, prohibits the imposition of increased penalties once sentence has been imposed. Indeed, it prohibits imposition of any increase in criminal penalties which is enacted after the crime is committed. Yet this clause was intended to work only one way; it does not prohibit imposition of reduced sentences for crimes committed after an ameliorative statute becomes effective. The framers found a need to protect the individual from increased penalties of which there was no warning, but saw no need to protect the people from acts of legislative mercy.

*law* remitting fines, penalties and forfeitures). Thus, when the private rights of parties have become vested in the judgment of a court, that judgment ordinarily cannot be taken away by subsequent legislation without violation of some specific constitutional provision.[11a] Where the private rights of individuals are not infringed, however, and none of the specific prohibitions of the Pennsylvania Constitution has been violated, the Legislature has the power to enact legislation which mitigates the consequences of a final judgment.

"[A] suit brought for the enforcement of a public right . . . even after it has been established by judgment

11a. As Mr. Justice Manderino points out in his dissenting opinion, this explains many of the opinions relied on by the majority. For example, in *Pennsylvania Co. v. Scott*, 346 Pa. 13, 29 A.2d 328 (1942), the Court stated:

"It is elementary that the legislature may not, under the guise of an act affecting remedies, destroy or impair judgments obtained before the passage of the act, and this principle prohibits not only a statutory re-opening of cases previously decided by the court but also legislation affecting the inherent attributes of judgments or annulling or substantially interfering with the right to issue execution and to collect the amount due thereon. There are two reasons for this limitation on legislative power; one, that *a judgment is property of which, under state and federal constitutional prohibitions, the judgment creditor cannot be deprived without due process of law*; the other that under our system of the division of governmental powers the legislature cannot invade the province of the judiciary by interfering with judgments or decrees previously rendered."

Id. 346 Pa. at 16–17, 29 A.2d at 329–30 (citations and footnotes omitted, emphasis added). As the quoted passage makes clear, the Court was very much concerned with the effect that altering final judgments would have on private property rights. Because private rights were implicated, there is no justification for fashioning a sweeping prohibition based on the broad language excerpted by the majority. Constitutional adjudication demands more careful attention to the interests which in fact are at stake.

It is also noteworthy that the Court in *Pennsylvania Co. v. Scott*, id., upheld the retroactive application of the Deficiency Judgment Act, Act of July 16, 1941, P.L. (1941) P.L. 400, §§ 1 et seq., 12 P.S. §§ 2621.1 et seq. (1967), to judgments entered and executed upon before the Act was enacted. Thus, I cannot agree with the majority that the case supports "the proposition that a legislative attempt to alter the effect of final judicial action imposed under prior law" necessarily "is a direct assault upon the power of the judicial branch."

of the court, may be annulled by subsequent legislation and should not thereafter be enforced . . . ." *Hodges v. Snyder*, 261 U.S. 600, 603, 43 S.Ct. 435, 436, 67 L.Ed. 819 (1923).

The enforcement of the sentences upon persons convicted before the adoption of the Controlled Substance Act constitutes "the enforcement of a public right." Judgments of sentence are enforced to vindicate the public's interest in obedience to the law, and to protect the public against future violations. It is also clear that the Resentencing Amendment does not offend any of the specific prohibitions in the Pennsylvania Constitution which restrict the power of the Legislature to alter final judgments. Because only public rights are involved, and the Legislature has decided that the harsh penalties formerly applicable no longer serve the public interest, the Legislature's decision to provide for resentencing should be respected.

I see no reason to adopt a sweeping prohibition, applicable even though none of the specific prohibitions in the Pennsylvania Constitution is implicated, against statutes which may alter final judgments. The Pennsylvania Constitution does not expressly provide for such an indiscriminate rule, and I do not believe that this Court should fashion one on the basis of the separation of powers doctrine. As explained in Part I of this opinion, the separation of powers principle is in no way offended when the Legislature provides, pursuant to a statute of general application, that persons convicted under prior laws should be resentenced by the courts in accordance with the lesser penalties provided for by the statute currently in force.[12] In enacting the Resentencing Amendment the Legislature is not reviewing a finding of guilt. Nor is the Legislature deciding that the trial court's choice of sentence

---

12. This is not a case where the Legislature has undertaken to review judgments on an individual basis. See generally Bator, Mishkin, Shapiro & Wechsler, Hart and Wechsler's The Federal Courts and the Federal System 85–102 (2d ed. 1973). The asserted dangers of such legislation may be addressed if the Legislature ever enacts such legislation. Here, it is enough to recognize that this Court is capable of separating such private legislation, for the benefit of specific individuals, from the legislation in question here.

in a particular case, although within the limits still recognized by the Legislature as proper, was an abuse of discretion. Rather, the Legislature has revised its own determination of the appropriate sentence for the offense in question. The decision to reduce punishment for a class of offenders is a matter within the province of the Legislature. It evinces no disrespect for the decisions of the judiciary, and does not impair the ability of the judiciary to reach its decisions. Simply because final judgments may be affected does not mean that the Legislature has infringed on the province of the judiciary.

The majority relies on *Commonwealth ex rel. Banks v. Cain*, 345 Pa. 581, 28 A.2d 897 (1942), for the proposition that legislation may not alter the sentence which has been imposed after judgment has become final. This reliance is misplaced, for *Banks* upheld the power of the Legislature to provide that convicted criminals sentenced to imprisonment may instead be released on parole. Thus, *Banks* demonstrates that the Legislature has the power to provide for the application of ameliorative legislation to convictions which have become final.

There is dictum in *Banks*, relied on by the majority, that legislation may not affect the duration of a sentence. I do not believe that such a rule would be sound, or that it could be reconciled with the holding in *Banks*. The parole legislation upheld in *Banks*, which provided that convicted criminals sentenced to imprisonment, in some cases at solitary confinement, could be released into the community, clearly had the effect of altering final judgments of the judiciary. While the freedom granted a parolee may be less than that given by a reduction in sentence, the difference is only a matter of degree and is not of constitutional significance. In either case, the effect is to alter a final judgment.

In support of its dictum that legislation may not affect the duration of sentences, *Banks* relied on the proposition that "[t]he fixing of the term of the sentence is exclusively a judicial function." 345 Pa. at 589, 28 A.2d at 901. This statement is correct insofar as it refers to the sentence to be

imposed upon a particular offender when the Legislature provides for a range of permissible sentences. It is the province of the Legislature, however, to determine the range of permissible sentences for an offense. *Commonwealth v. Glover*, 397 Pa. 543, 146 A.2d 114 (1959); see *United States v. Lewis*, 300 F.Supp. 1171 (E.D.Pa.1969). Indeed, with the abolition of common law crimes, 18 Pa.C.S.A. § 107(b) (1973), the judiciary has no power to fix penalties for criminal offenses unless they have been provided for by the Legislature. See *Commonwealth ex rel. Varronne v. Cunningham*, 365 Pa. 68, 73 A.2d 705 (1950).[12a]

The Court in *Banks* stated that the parole legislation did not alter the sentence which had been imposed, relying on the fiction that the parolee was in fact being imprisoned

**12a.** The majority relies heavily on the judicial discretion involved in imposing sentence in support of its conclusion that the Resentencing Amendment is unconstitutional. The Resentencing Amendment does not eliminate that discretion, however. The court has the same discretion in imposing sentence under the Resentencing Amendment as it does in imposing sentence on persons convicted of violating the Controlled Substance Act. Even if the court had no discretion, however, this would not mean that the Resentencing Act was unconstitutional. See *United States v. Lewis*, 300 F.Supp. 1171 (E.D.Pa. 1969) (mandatory sentencing provisions of narcotics statute do not violate separation of powers).

The majority also relies on the possibility that, although appellant Sutley pleaded guilty to a charge of possession of marijuana, the sentencing judge concluded that Sutley was in fact guilty of sale of marijuana. The majority asserts that it is common to accept a plea to a lesser offense, then impose the same sentence as would be imposed if the defendant had been found guilty of the greater offense. I am not prepared to take judicial notice that such a practice is widely followed. As the judge who sentenced Sutley was not the judge who accepted the plea, a claim that the practice was followed here would be pure speculation. Assuming the practice is a common one, it raises some troublesome issues. It is certainly arguable that it would be improper to sentence a person as though he had been convicted of the greater offense, when he has only been convicted of a lesser offense. In some cases, the practice might raise doubt as to the validity of the plea. The propriety of the practice is not before us, however. It is enough to conclude that the possible existence of the practice is not a sufficient basis to hold that the Resentencing Amendment is unconstitutional. Any argument that the Resentencing Amendment will reduce the punishment of some individuals who ought to be punished more severely goes to the wisdom of the Resentencing Amendment, not to its validity.

while on parole: " 'The parole authorized by statute does not suspend service or operate to shorten the term. . . . *[I]t is in legal effect imprisonment.'* " *Commonwealth ex rel. Banks v. Cain*, 345 Pa. at 588–89, 28 A.2d at 901, quoting *Anderson v. Corall*, 263 U.S. 193, 196, 44 S.Ct. 43, 46, 68 L.Ed. 247 (1923) (emphasis supplied in *Banks*). This theory, however, cannot be reconciled with subsequent cases, e. g., *Commonwealth ex rel. Rambeau v. Rundle*, 455 Pa. 8, 314 A.2d 842 (1973), which held that, after parole revocation, a prisoner is not entitled to have credited against the time he must serve in prison the time spent while at liberty on parole.[13]

The dictum in *Banks*, that legislation may not affect the duration of sentences, apparently was an effort to avoid overruling *Commonwealth ex rel. Johnson v. Halloway*, 42 Pa. 446 (1862). In *Johnson*, a majority of the Court expressed its belief that legislation could not interfere with a judicially imposed sentence by providing for the discharge of prisoners before the expiration of their terms on the basis of "good time" credits.[14] I believe the time has come for this Court to recognize that the reasoning of *Johnson* is unsound. *Johnson* reasoned that criminal sentences may be fixed "only by the exercise of that judicial discretion which the constitu-

13. "It has become a routine exercise to discredit the custody theory on the basis of its conflict with the forfeited release-time concept. The parolee is supposedly still serving his sentence. If he violates his parole, however, all of his parole time is forfeited as if he had not been in custody during that time. Beyond this direct conflict, if the prisoner is considered to be in custody, this practice is roughly analogous to the bizarre possibility of allowing a warden to extend prison terms beyond the prescribed maximum."
Comment, The Parole System, 120 U.Pa.L.Rev. 282, 291–92 (1971) (footnote omitted).

14. In his dissenting opinion, Mr. Justice Manderino concludes that the discussion of the constitutionality of the legislation in *Johnson* was not a holding of the Court. I agree with this conclusion. Although the Court in *Johnson* stated that it thought the act was unconstitutional, it decided the case "independently of the constitutional objection, which is not decisive to all of us." 42 Pa. at 449. However, despite this clear indication that the constitutional discussion in *Johnson* was dictum, this Court in *Banks* treated this discussion as a holding of the Court and felt constrained to reconcile its holding with *Johnson*.

tion has vested in the judiciary." Id. at 449. Even assuming that this proposition may once have been valid as to common law offenses, it has no application to offenses created by statute. See generally *Commonwealth ex rel. Varronne v. Cunningham*, 365 Pa. 68, 73 A.2d 705 (1950). When it imposes sentence, the judiciary only has such discretion as has been granted to it by the Legislature, *Commonwealth v. Glover*, 397 Pa. 543, 156 A.2d 114 (1959), and there is no requirement that the judiciary be granted any discretion over the sentence to be imposed, *United States v. Lewis*, 300 F.Supp. 1171 (E.D.Pa.1969).

Although *Banks* tried to distinguish *Johnson*, the cases cannot be reconciled. The fiction employed in *Banks* does not change the fact that the legislation upheld in *Banks* reduced the punishment imposed by final judgments of the judiciary. This Court should follow *Banks*' sound result, and recognize that the Legislature has the power to enact a statute of general applicability providing for the mitigation of the punishment imposed pursuant to existing judgments.

### IV

I would uphold the Resentencing Amendment as a valid exercise of legislative power. The need to preserve the independence of the judiciary and to protect the people against overreaching by the Legislature neither requires nor justifies a decision holding the Resentencing Act unconstitutional. Indeed, for the majority to strike down such legislation, which the Legislature has the power to enact and which presents no real danger to the separation of powers, is an unwarranted judicial invasion of the province of the Legislature.

MANDERINO, Justice, dissenting.

Because the majority misconceives the nature of the separation of governmental powers, I dissent. Article 2, Section 1 of the Pennsylvania Constitution states,

> "[t]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."

The "legislative power" has been interpreted to be the power to make, alter, and repeal laws. *In re: Marshall*, 363 Pa. 326, 69 A.2d 619 (1950). *See also, Petition of City of Pittsburgh*, 376 Pa. 447, 103 A.2d 721 (1954). Traditionally, legislative enactments are general in character. *See, Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1908). This power to make, alter, and repeal laws is *derived from the people*. Except where limitations have been imposed by the state or federal constitutions, or by valid treaties and statutes, the power of the legislature is unlimited. See generally 16 Am.Jur.2d, Constitutional Law §§ 227–234; and *McGinley v. Scott*, 401 Pa. 310, 164 A.2d 424 (1960). Among the powers granted to the legislature by the people at the time of the creation of our constitutional form of government, was the power to pardon those convicted of crimes. *U. S. v. Hughes*, 175 F. 238 (D.C.1892). In fact, the legislative pardoning power was recognized in *United States v. Wilson*, 7 Pet. 150, 163, 8 L.Ed. 640, 644 (1833), as being superior to the pardoning power of the executive because,

" . . . [a legislative pardon] is considered as a public law; having the same effect on the case as if the general law punishing the offense had been repealed or annulled."

The executive power is more limited, being the power only to execute the laws as they have been enacted by the legislature and interpreted by the courts. Except where limited by the constitution, the legislature may stipulate what actions the executive branch shall or shall not perform. The executive branch, although co-equal to, and independent from, the legislature, exercises this limited power because of the nature of the Constitution itself. The authority of the legislature is unlimited so long as the exercise of that authority does not violate any constitutional limitations. *Commonwealth v. Wormser*, 260 Pa. 44, 103 A. 500 (1917); *Sharpless v. Mayor of Philadelphia*, 21 Pa. 147 (1853). The authority of the executive, on the other hand, extends only so far as is expressly provided in the Constitution. One of the powers expressly granted to the executive is the pardoning power. Pa.Const. Art. 4, Section 9.

The judicial power is one of interpreting, applying, and enforcing existing laws as they relate to past transactions or to conditions existing at the time of the exercise of the judicial power. Once the court is created, its power derives from the Constitution, not from the statute creating it.

The judicial power of the Pennsylvania Courts is derived from Article 5 of the Constitution of Pennsylvania which vests the judicial power in a unified court system. Like the executive branch, the power of the judicial branch is limited in extent to that expressly provided for by law. Const. Art. 5, §§ 2–8. Among the judicial powers so provided by law is the power to sentence those judged guilty of crime.

As was stated in *United States v. Hughes, supra,* at 242: "[f]rom the very nature of government, it required no reasoning to prove the self-evident proposition that in Pennsylvania the power of pardon was vested in the legislative branch by the inherent power of the supreme law making power and in the executive by constitutional provision. The grant of this power to the executive was no limitation on the right of the power granting it to exercise it also."

The legislative pardoning power has been said to be "precisely that which would have been afforded to the criminal if the Governor of the State issued free and unconditional pardon." *Perkins v. United States ex rel. Malesevic,* 99 F.2d 255, 258 (3d Cir. 1938), citing *Diehl v. Rodgers,* 169 Pa. 316, 32 A. 424 (1895). See also, former Act of March 31, 1860, P.L. 382, § 181 (19 P.S. 893) (repealed in part by 18 P.S. 5201).

Having the authority to pardon absolutely, it follows that the legislature could devise a system to partially pardon those convicted of possession of certain controlled substances. This was done by the resentencing provision of the Controlled Substance, Drug, Device and Cosmetic Act.

Clearly, the exercise of the authority to pardon those convicted and sentenced by the courts, whether done by the executive or by the legislative branch, affects a "final judg-

ment" of the judiciary. A "final judgment" in a criminal case, however, has never been held to be free from the power of pardon. None of the cases relied on by the majority for the proposition that the legislature may not interfere with judicial judgment of sentence stands for that proposition. The cases cited by the majority fall into two classes: the cases cited either, (1) *upheld* legislative attempts to affect judicial decisions, and thus the passages quoted from them by the majority are merely dicta, or (2) the cases cited deal with legislative attempts to interfere with judicial judgments in *civil* cases, and, as becomes clear when these cases are analyzed, they are either inapposite or involved legislative attempts to deprive litigants of property in violation of the constitutional prohibition against taking property without due process of law, or they violated the constitutional prohibition against amending a statute by reference to its title only. The case before us involves neither of these constitutional provisions.

Into the first group of cases fall *Comm. ex rel. Banks v. Cain*, 345 Pa. 581, 28 A.2d 897 (1942), (*upholding* the legislative creation of a board of parole, and allowing the Act's provisions to be applied to cases where sentence was imposed before its effective date); *Comm. ex rel. Johnson v. Holloway*, 42 Pa. 446 (1862), (where the court decided on non-constitutional grounds that the challenged statute granted the "inspectors of the Penitentiary" a measure of discretion as to whether a prisoner was entitled to discharge under the Act, and that the inspectors had not abused that discretion, thereby *upholding* the statute); and *Leahey v. Farrell*, 362 Pa. 52, 66 A.2d 577 (1949), (holding that a statute regulating the method of determining the number and fixing the salaries of court employees is *not unconstitutional* because of legislative encroachment on the judiciary so long as the legislature does not arbitrarily and capriciously fail to provide a sufficient number of court employees or for the payment of adequate salaries).

Into the second group fall *Greenough v. Greenough*, 11 Pa. 489 (1849); *In re East Grant Street*, 121 Pa. 596, 16 A. 366

(1888); *Titusville Iron Works v. Keystone Oil Co.,* 122 Pa. 627, 15 A. 917 (1888); *De Chastellux v. Fairchild,* 15 Pa. 18 (1850); *Appeal of Edwards,* 108 Pa. 283 (1885); and *Pennsylvania Company, etc. v. Scott,* 346 Pa. 13, 29 A.2d 328 (1942).

*Greenough v. Greenough, supra,* involved a disputed claim under a will. The court held that the challenged legislative enactment could not be applied retroactively because to do so would violate a provision of the Pennsylvania Constitution providing that no person shall be deprived of life, liberty or property except by judgment of his peers or the law of the land. *Greenough* thus stands for the proposition that the legislative attempt to overrule a judicial decision was invalid because it violated a specific constitutional prohibition, not because of any legislative encroachment on the judicial power.

*De Chastellux v. Fairchild, supra,* held that the legislature could not direct the grant of a new trial in a trespass action because to do so deprived the plaintiff " . . . of a judgment, which is essentially his property . . . ." Thus *De Chastellux,* like *Greenough,* prohibits the legislative taking of property without due process of law because it violates a specific constitutional prohibition.

*Pennsylvania Company v. Scott, supra,* also held that the legislature could not affect previously rendered judgments because a judgment is "property" of which the judgment creditor cannot be deprived without due process of law under the state and federal constitutions.

In *In re East Grant Street, supra* the court stated that the Act of June 8, 1881 " . . . professes to declare the meaning of the said section of the act of 1874, and if this were all, the act of 1881 would conflict with Section 6 of Article 3 of the Constitution which declares that 'no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended, or conferred shall be re-enacted, and published at length.' " The court continued, however, and pointed out that the Act of 1881 went

further and validly amended the Act of 1874. *East Grant Street* thus stands simply for the proposition that a legislative attempt to change a pre-existing law by reference to its title only, is violative of Article 3, § 6, of the Pennsylvania Constitution, and that to amend a pre-existing statute the legislative must re-enact and publish "at length."

*Titusville Iron Works v. Keystone Oil Co., supra,* held only that the Act of June 17, 1887, violated Article 3, Section 6 of the Pennsylvania Constitution in providing that two other acts (mentioned only by title and date) should be construed in a certain way. Like, *East Grant Street, Titusville Oil* held only that the legislature violates a specific constitutional prohibition when it attempts to amend a pre-existing statute by reference only to its title.

*Appeal of Edwards, supra,* held that the legislature could not alter the *fact* of illegitimate birth so as to entitle such a child to take by purchase under a limitation in a prior deed of trust to "lawfully begotten children." The court said that the legislature did have the power to confer legitimacy upon an illegitimate child so as to render him capable of inheriting from an ancester to the same extent as if he had been born in wedlock. That legislatively conferred legitimacy, however, did not make him "lawfully begotten" so as to come within the condition in the trust. *Edwards* in no way stands for the proposition urged by the majority.

Clearly therefore, none of the cases relied on by the majority opinion support the proposition that the resentencing provision of the revised Controlled Substance, Drug, Device and Cosmetic Act encroaches upon the exclusive province of the judiciary. The resentencing provision does not encroach on exclusively judicial powers and should be upheld.